SCHOTT, Judge.
Louis Jordano, Jr. and his liability insurer, United States Fidelity & Guaranty Company, have appealed from a judgment in favor of plaintiff in the amount of $125,000 and in favor of the intervenor, Phoenix of Hartford Insurance Company (workmen’s compensation insurer of Louis Jordano, Jr., doing business as Jordano Construction Company), for workmen’s compensation benefits it paid and continues to pay to the plaintiff. Plaintiff has also appealed with the prayer that the judgment of the trial court be affirmed but in the alternative praying for judgment in her favor against Jordano Lumber & Supply Company, Inc.
This litigation arose out of an accident which occurred on February 12, 1968, while a sewer line was being laid at 106 East Airline Highway in Kenner. The project, under the supervision of Louis Jordano, Jr., had progressed to the point where a backhoe had excavated a ditch two feet wide and approximately seven or eight feet deep. Plaintiff’s husband, Harvey Finch, and one William Taylor were in the ditch laying and connecting segments of the sewerage pipes when the excavation caved in on Finch fatally crushing him.
The trial judge found that Finch was usually paid by and was a regular employee of Louis Jordano, Jr., doing business as Jordano Construction Company, a sole proprietorship, but at the time of the accident was doing work for and as a borrowed employee of Jordano Lumber & Supply Company, Inc., of which Louis Jor-dano, Jr., was the president; that at the time of the accident, Jordano was functioning as the corporation’s executive supervising the work being performed by Finch and his co-workers with materials purchased by the corporation; and that Jordano’s liability was based upon his negligence as an executive officer of the corpo *643 ration in failing to protect Finch from the cave-in.
The questions before us are, at the time of this accident, was Harvey Finch an employee of the lumber corporation or the construction company and was Jordano acting as the president of the lumber corporation or in his individual capacity as the sole proprietor of the construction company? To answer these questions we must first consider the background and status of each of the entities and individuals involved in the ownership and use of the property where the accident took place.
The primary owner of the property was a Mrs. Mary Jordano, widow of Frank Jordano, who had full ownership over five-eighths interest in the property and the usufruct over the remainder, the naked ownership of which belonged to Louis Jor-dano, Jr. and his two minor children. Until Hurricane Betsy in 1965 the lumber corporation had been an active business located on the premises, but the building where it was then located was extensively damaged along with the inventory of lumber and building materials. Following the storm, Mrs. Mary Jordano collected the insurance proceeds for the damage to that building as well as the other buildings located on the property and Louis Jordano, Jr. intended to construct another building on the premises where the lumber company could continue to operate. In connection with these plans, Mr. Jordano borrowed $30,000 from the Small Business Administration and by February 12, 1968, the building located approximately 300 feet from the Airline Highway was near completion. Jordano testified that sometime prior to February 12, 1968, he had second thoughts abut reopening the lumber company and by 1970 decided to repay the SBA loan and use the new building as a warehouse available for rent to others. The sewer line was to extend approximately 300 feet from its point of beginning near the highway and was to serve the new building as well as several residences located between it and the highway. One of the residences to be tied into the sewer line was being occupied by decedent, Harvey Finch. When the accident occurred the sewer line had progressed only to the extent of approximately 50 feet from its point of beginning off the highway.
Mr. Jordano’s testimony that the lumber company was inactive, and for all practical purposes out of business, was corroborated by the income tax returns of the lumber company for the fiscal year ended June 30, 1967, which showed gross sales of only $4788.68 and contained the explanation “business is closed until new bldgs, can be built, only an occasional sale is made.” The corporate records also showed that the only employee on the payroll of the lumber company for 1967 and 1968 until the time of the accident was Mrs. Marion Van Hae-len, a 73-year old lady whose job consisted of answering the telephone, serving customers who picked up material on a cash and carry basis, doing minor bookkeeping for the corporation and for Mrs. Mary Jordano and collecting accounts receivable. She testified that after the hurricane until the time of the accident in this case, operations of the lumber company were carried out from the delapidated remains of the original building which was in such a condition that a tarpaulin was placed over the office area to keep out the rain, but that no operations of the lumber company were ever commenced in the new building which the sewerage line was destined to serve. The only other operations of the lumber company consisted of some occasional purchases of material including the purchase 'by it for Mr. Jordano of the very pipe being used at the time of this accident. The lumber company did own some vehicles, it maintained policies of automobile and other insurance including the policy of USF&G which forms the basis of its liability in this lawsuit. The trial judge held and we agree that the corporation was a viable legal entity as of the time of the accident, but the evidence is also clear to the effect that it was engaged in very little commercial activity with its future in doubt. The evidence does lead to the con- *644 elusion that the lumber company would probably occupy the new building when completed, although there was no definite legal commitment on its part to do so and although Mr. Jordano testified that no such decision had yet been made.
On the other hand, the principal occupation of Louis Jordano, Jr. was that of the Jordano Construction Company, a sole proprietorship owned by him. His income tax return for the year 1967 showed that he had realized gross receipts from his construction business of approximately $300,000. He had regular employees on his payroll, including Harvey Finch and William Taylor. He operated construction equipment and vehicles and performed work not -only for Mrs. Mary Jordano but also other customers. Payroll records of the construction company showed that although Finch was a regular employee of the construction company he was at times sent to the lumber company to perform work for it, and even on February 9, 1968, the date of his last paycheck preceding his death, an entry was made that 24 hours of time for that pay period had been spent at the lumber company.
There is no question but that the relationship between the lumber corporation and the construction company was extremely close and the books and records introduced in evidence at the trial contain details which were not satisfactorily explained by Mr. Jordano and lead to a conclusion that with ease he took off the hat of the sole proprietor of the construction company and put on the hat of the corporation’s president if it was convenient for him to do so. For instance, while no salary was ever paid to him by the corporation in cash, on the books of the corporation he was credited with $500 per month for the entire year 1967 and into the year 1968. He testified that although his construction company was building the - sewer line for Mrs. Mary Jordano he ordered the sewerage pipe through the lumber corporation in order to get a dealer’s discount from the supplier. His testimony that this pipe was thereafter sold by the corporation to the construction company was not corroborated by any of his books and records or by the testimony of Mrs. Van Haelen or an accountant who kept the lumber company’s books. He used his employees, including Finch, as well as others, to work on the lumber company’s building whenever it was convenient for him to do so. Both companies used the same business address, 106 East Airline Highway.
It is plaintiff’s contention that the sewer line was being constructed for the benefit of the lumber corporation and that Jordano was acting in his capacity as the president of the corporation directing the project and using Finch and the others as employees of the corporation when the accident occurred. Plaintiff contends that she thereby has a right to proceed against Jor-dano as an individual under the provisions of LSA-R.S. 23:1101, notwithstanding the fact that the decedent was ordinarily an employee of the construction company and therefore ordinarily limited to an action in workmen’s compensation against Jordano individually under the provisions of R.S. 23:1032.
It should be noted at this point that even though the lumber corporation may have intended to occupy the completed building and might thereby become the beneficiary of the sewer line once it was completed, these facts do not support a conclusion that the lumber corporation was itself performing the construction project. This sewer line was being laid on property of Mrs. Mary Jordano and was to serve not only that building but other residences located on the property as well, including the one occupied by decedent. While plaintiff makes much of the absence of any formal contracts or agreements between Mrs. Mary Jordano and Louis Jordano, Jr. it is clear that Mrs. Mary Jordano, as usufruc-tuary of the whole of the property, would be the principal beneficiary of any improvements made thereon. The mere fact that the completed sewerage line might make the building suitable for the *645 lumber corporation’s use did not mean that the lumber corporation would necessarily occupy the building and derive benefit from the sewerage installation, and it certainly does not follow that the lumber corporation was itself performing this construction work.
On the contrary, the evidence is clear that this lumber corporation for a long time prior to the date of this accident was engaged almost exclusively in the liquidation of its inventory and the collection of accounts receivable which were on its books when its normal operations were interrupted as a result of the hurricane. There is no evidence that this lumber corporation ever engaged in any construction work before or after the hurricane. The books and records of both the corporation and the construction company, and especially those entries made before this accident happened and at a time when Mr. Jordano was unsuspecting and in no way motivated to take the position that Finch was an employee of his construction business, show conclusively that the lumber company had but one employee, Mrs. Van Haelen, while the construction company had several employees including Harvey Finch and William Taylor. While plaintiff contends that the method of keeping payroll records on the two companies was strictly a matter of bookkeeping for the convenience of Mr. Jordano, Jr. and therefore do not compel a legal conclusion that at the time of this accident Harvey Finch was an employee of the construction company, we find it difficult to ignore the overwhelming weight of the federal and state income tax returns for the two companies as well as the quarterly social security tax returns, which consistently carried Finch as an employee of the construction company. Assuming, however, that these records of themselves are not dispositive of the issue we find that the facts and the law do not support the proposition that Harvey Finch was a regular or borrowed employee of the lumber corporation at the time of his fatal accident.
WAS DECEDENT A REGULAR EMPLOYEE OF THE CORPORATION?
In support of the proposition that at the time of the accident Finch and Jordano, Jr. were employees of the lumber corporation plaintiff relies heavily upon the case of Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483, cited by the trial judge in his reasons for judgment as authority for his finding that the construction company was not an independent contractor with respect to the corporation but was an employee. Plaintiff argues that the absence of 1) an agreement of any kind between the lumber and construction companies, 2) a specified price agreed upon between these parties, 3) a duration of time in which the work was to be done and 4) a prohibition against ter-mininating at will without a corresponding liability for breach, all lead to the inescapable conclusion that the construction company, i.e., Louis Jordano, Jr. was not an independent contractor with respect to the corporation but was an employee of the corporation. In the Amyx case the Court was dealing with a question of whether a tortfeasor who was a truck hauler was an employee or an independent contractor with respect to the owner of a gravel pit, and the court, after finding that there was no agreement as to any specific amount of hauling or as to duration of such agreement, that the employer owned no trucks but loaded the truck of the tortfeasor, as well as other haulers, through the use of employer’s own equipment under the supervision of its own foreman, that specific instructions were given to the tortfeasor as to his destination and routes to be taken, that the tortfeasor was carried on the weekly payroll of the employer as were the other truck haulers, that he was paid his earnings (computed by the load) at the end of a work week, concluded that the relationship was not that of independent contractor but instead employer-employee, making the employer vicariously liable for the tort. But that case is not the same as or even analogous to the instant case *646 where Louis Jordano, Jr. regularly engaged in construction work and regularly the employer of Harvey Finch undertakes a construction project utilizing Finch and his other employees, which project might prove to be beneficial to a lumber corporation of which Jordano was president and which was engaged in the work of selling lumber but never performed any construction work as such. In the Amyx case the employer needed the services of truck haulers as an integral part of its operation in selling and delivering from its gravel pit, but in the instant case the lumber corporation can hardly be said to have employed Jordano, Finch and the others to do construction work which was outside of and beyond the scope of its ordinary operations.
This Court in deciding whether the plaintiff was an employee for workmen’s compensation purposes held in Sicard v. City of New Orleans, 176 So.2d 672 (La.App. 4th Cir. 1965):
“The employee-employer relationship is determined essentially by the right of control and supervision over the employee. The factors to be considered in deciding the right of control and supervision are the selection and engagement of the worker, the payment of wages of the worker, and the power of control and dismissal.”
When Finch’s relationship to the lumber corporation is considered by these standards we find that Louis Jordano, Jr. individually was in control and exercised supervision over him. Finch was always engaged as an individual employee of Jor-dano and contrariwise the evidence does not show that the lumber corporation ever engaged any workers other than Mrs. Van Haelen. At all times Finch’s wages were paid by the construction company and the power of control and dismissal was always with Jordano individually.
This Court had occasion to consider still another element in determining whether an individual is an employee or an independent contractor in Kamm v. Morgan, 157 So.2d 118 (La.App. 4th Cir. 1963) where in holding that a seaplane pilot was not an employee of a pest control company, said the following:
“Thus, if the employer possesses the right to direct the manner in which the work is performed by the employee, there is clearly a master-servant relationship established. However, if the employer or contractor is only interested in the end result and retains no right to supervise the manner in which the contract or work is performed, then the party rendering the service is characterized as an independent contractor.”
In the instant case the lumber corporation was at best only interested in the end result of having sewerage facilities in a building which it might or might not occupy, but the corporation through its president did not supervise the manner in which that sewer line was to be laid but rather left that to Jordano in his capacity as proprietor of a construction company which normally performed that type of work.
WAS DECEDENT A BORROWED EMPLOYEE OF THE CORPORATION?
In his discussion of borrowed employee, at Sec. 57 of Louisiana Workmen’s Compensation Law and Practice, p. 61, Professor Malone says the following:
“A lending arrangement is in effect a three-party agreement. This means that not only must there be an understanding between lender and borrower, but the employee, as well, must have consented to the change of masters. For example, a construction laborer was ordered by the company employing him to perform work on the private property of one of the company’s officers under an arrangement whereby the company continued to be responsible for his wages, but was to be reimbursed by the officer. This was without the knowledge of the employee, who reasonably believed that he was *647 doing company work subject to its orders. Under these circumstances the company was not allowed to deny that the claimant, who was injured during his assignment, was its employee.”
This would be authority for the proposition that the lending employer cannot be held to lose his status of employer without the consent of the employee. But in 56 C. J.S. Master and Servant § 2, there is also authority for the proposition that one cannot be held to be the borrowing employer without the employee’s consent to that thjcee party agreement :
“The general servant of one person may be lent to, and become the servant of another by submitting himself to the direction and control of the other with respect to a particular transaction or piece of work, even though the general employer has an interest in the special work, and in such case the servant remains the general servant of the lender except as to the particular work done for the borrower. However, such a relation between the borrower and the servant is not established unless it appears that the servant has expressly, or by implication, consented to the transfer of his services to the new master, and unless the lender surrenders and the borrower assumes the power of supervision and control.” (Emphasis, the writer’s)
Unfortunately, we do not have the benefit of Harvey Finch’s testimony but we find that the testimony of his co-worker, William Taylor, is particularly significant in this regard. Taylor was employed to do the same type of work as was Finch, and at the time of this accident was doing the same type of work in the very same ditch and suffered injury in the same cave-in. His testimony was as follows:
“Q. Now at the time of this accident, back in February of 1968, when it happened, who were you working for?
A. Jordano Construction Company.
Q. The lumber and supply company, it was out of business at that time?
A. It was out of business.”
Taylor testified that he never worked for the lumber corporation and only worked for the construction company. In answer to the direct question as to who Harvey Finch worked for at the time of this accident he answered “For Jordano Construction.”
This testimony completely supports the testimony of Mr. Jordano to the effect that Finch was an employee of his construction company, at all times, and tends to negate the proposition that Finch was a party to any agreement whereby he became an employee of the lumber corporation at any time during the course of the sewer project.
Another test to determine whether Harvey Finch was a borrowed servant of the corporation is found in Commercial Union Insurance Company v. Bringol, 262 So.2d 532 (La.App. 4th Cir. 1972):
“To determine the applicability of the borrowed servant doctrine, the proper test is the right of control, in that the right to control between the original employer and the employee must cease, or be suspended, and that the new employer must assume the control, or the right to control.”
We cannot see how or where Louis Jor-dano, Jr., in his capacity as the sole proprietor of the construction business ever relinquished control over Harvey Finch with that right of control passing to the lumber corporation. It would be unreasonable to conclude that Finch who normally performed construction work under the control of Jordano individually was somehow at the time of the accident performing his usual tasks as a construction worker under the control of the same individual but that individual now assumed control over Finch as executive of the lumber company. The most significant factor in resolving the problem is that Finch was functioning as a *648 construction worker when he was injured. A different conclusion might he reasonable if, for example, Finch had been cleaning up the lumber company premises or waiting on a customer of the lumber company and was injured when a stack of lumber fell on him.
From the foregoing, we have concluded that Finch was not an employee of the lumber company at the time of the accident and the same considerations also lead to a conclusion that Jordano was acting as sole proprietor of his construction company and not executive officer of his lumber corporation at the time of Finch’s accident. Moreover, Jordano’s testimony corroborated by his own personal income tax returns supports the conclusion that he was engaged in the construction business on a full time basis and in that capacity alone was constructing the sewer line when the accident occurred. Aside from the fact that the lumber corporation might eventually benefit by the project, there is no evidence that Jordano had undertaken this particular construction project in his capacity as the president of the corporation. In fact, there is no evidence that Jordano did anything in his capacity as president of the corporation other than 1) sign checks, including a number of checks payable to his construction company which he characterized and which were designated on the corporation’s books as advances to him (including such “advances” for the two weeks preceding Finch’s death out of which funds Jordano paid Finch and other employees from the construction company) and 2) apply for the SBA loan after Hurricane Betsy. To find that he had just prior to the fatal accident put on the hat of the lumber corporation president, supervising this construction project, would not only strain the facts and circumstances of this case but would also create an unsupported legal fiction on which to base liability beyond that of Jordano’s individual workmen’s compensation liability to decedent.
Finally we refer to the intriguing case of Duprey v. Shane, 109 Cal.App. 586, 241 P.2d 78 (1951), affd. 39 Cal.2d 781, 249 P.2d 8 (1951), cited by plaintiff in which a chiropractor’s employee who was injured during the course of her employment, sought treatment from her employer-chiropractor who negligently aggravated the injury. The employee sued the employer in tort. The chiropractor-employer submitted the statutory defense of exclusive remedy (similar to the Louisiana statute R.S. 23:1032), but to no avail. The Court held that the employer’s act of negligence was in his capacity as a treating doctor and thus he was “a person other than the employer” and the exclusive remedy defense was not available to him in that capacity. [Cf. LSA-R.S. 23:1101]. From this case plaintiff argues that a person who has a dual capacity cannot use the one capacity to escape tort liability that occurs while he is occupying his other capacity. Citing Larson, The Law of Workmen’s Compensation, Vol. II, Sec. 72:80, plaintiff contends that the exclusive remedy doctrine is not an absolute defense and is of no avail as a defense in a tort action when the employer leaves the protective umbrella of being an employer, dons another hat, and in this second capacity commits a tort against a person classified as an employee under the former’s first capacity (his first hat).
But plaintiff’s argument fails because Jordano never left his capacity as the proprietor of his construction company.
Accordingly, we must conclude that the decedent was an employee of the construction company, that Jordano was acting in his capacity as the owner of that construction company supervising Finch’s work, and that therefore plaintiff’s exclusive remedy restricted by R.S. 23:1032 to workmen’s compensation benefits.
Having found that Jordano was working in his individual capacity and not in his corporate capacity there is no vicarious liability on the part of Jordano Lumber & Supply Company, Inc.
Accordingly, the judgment in favor of plaintiff, Mrs. Jamie Beard, widow of *649 Harvey Finch, is reversed and there is judgment in favor of Louis Jordano, Jr. and United States Fidelity & Guaranty Company, dismissing the suit of plaintiff and the intervention of Phoenix of Hartford Insurance Company at their cost. Insofar as the judgment of the lower court dismissed plaintiff’s and intervenor’s suit against Jordano Lumber & Supply Company, Inc. the judgment is affirmed.
Reversed in part, affirmed in part.