## SPRIGG *vs.* BEAMAN.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, THE JUDGE OF THE FOURTH PRESIDING.

In an hypothecary action, the defendant cannot, after the general denial has been pleaded in the court of the first instance, first raise the objection on appeal, that the oath as to the debt is not annexed to the plaintiff's petition, and that payment has been in vain demanded, thirty days before the institution of the suit.

A surety who pays and is subrogated to the rights of the creditor against the principal debtor may legally issue execution in the name of the judgment creditor.

Personal demand on the debtor, previous to bringing the hypothecary action against the third possessor, will not be required where the debtor has absconded. A return by the sheriff of *nulla bona,* is sufficient.

In the assignment of a judgment the legal and the express subrogation are of equal extent, and every right which the creditor possessed, passes by the act of payment to him by whom that payment is made.

An attorney interrogated as a witness in a cause upon his *voir dire,* swore " that he had not stipulated any particular fee, but expected to be paid for his legal services, and that it was his habit, when he had not stipulated for his fee to charge less, should he fail in the cause than if he were to succeed; and that he would feel bound by his rule of conduct to apply it in this case." It was held by the court that he was admissible as a witness, for his client.

WESTERN DIS
October, 1833.

SPRIGG
vs.
BEAMAN.

A debtor, who is liable in warranty, if the plaintiff succeed against his vendee, has a direct and legal interest, which renders him incompetent to testify in the cause.

The authority to collect a note, necessarily implies the power to extinguish the right of the creditor in it, and whether the payment by which this extinction is produced, be made by the debtor or any other person, is a matter of no importance, provided that the attorney expressly stipulates, that the transfer is made without recourse to his client.

The word "rights," in *Louisiana Code, art.* 2156, embraces every thing included in the following words, "actions, privileges and mortgages."

If an absolute judgment be rendered when the petition prays only for a conditional one, it is good ground for reversal.

This was an hypothecary action brought to subject certain slaves in the hands of the defendant, as third possessor, to the plaintiff's mortgage. The latter derives his mortgage from a recorded judgment obtained by one James Miller against G. C. Russell, at the May term of the Rapides District Court in 1829. In December, 1828, Miller, by his attorney at law, and in fact, Isaac Thomas, for value received, transferred said judgment with all its privileges and mortgages to the petitioner. Since the recording and transfer of the above judgment, the defendant purchased a number of slaves at sheriff's sale, sold as the property of G. C. Russell, and subject to the mortgage under said judgment.

The defendant expressly denied the authority of Mr. Thomas, as the attorney in fact of Miller, to transfer his judgment against Russell to Sprigg, and subrogate the latter to Miller's right, privileges and mortgages under the judgment. He averred that Miller was dead when the transfer was made, and the power under which it was made, was insufficient; and that it was made in fraud and without consideration.

The power of attorney from Miller to Thomas, declares that " I, James Miller, &c., do nominate and appoint Isaac Thomas, my attorney in fact, with full power to arrange,

settle and receive the amount of a claim due me by G. C. Russell, and which is at this time in the hands of my said attorney; hereby clothing him with full power to do any thing in relation to said claim that he may think proper, or take any steps for the security therefore."

On the trial, I. Thomas, Esq., was called as a witness, and objected to on the score of interest; having a fee in the case as counsel.

It was also objected by defendant, that the return of the sheriff of *nulla bona*, on the execution against Russell, was sufficient notice to the third possessor, of the non-payment of the debt; and that the execution, itself, was null, having been issued by the assignee in the name of the judgment creditor.

The district judge overruled all these objections, and gave judgment for the plaintiff's whole claim. The defendant appealed.

*Thomas*, for plaintiff and appellee.

1. The main question here, is whether the power of attorney from Miller, was sufficient to transfer all his rights to this judgment against Russell?

2. The power is full and ample to his attorney to secure the payment of the debt in any lawful way, and makes the subrogation legal. It was special, because it related to the settlement of this particular debt.

3. The objection to counsel being sworn as witnesses in their causes, cannot be sustained. The code makes them competent witnesses, and the taking a fee does not disqualify them.

*Winn*, for defendant and appellant.

1. This being an hypothecary action, is improperly brought, because there is no oath annexed, that the debt is due and remains unpaid, and that payment has in vain been demanded of the principal debtor thirty days before suit against the third possessor. *La. Code*, 3364, 5. *Code of Practice*, 68, 69, 70.

WESTERN DIS
October, 1833.

SPRIGG
vs.
BEAMAN.

2. The surety who pays the debt, cannot take out execution in the name of the creditor; so the *fi. fa.* issued by Sprigg in Miller's name, against Russell, was null and void, and the sheriff's return of *nulla bona* was illegal, and did not operate a notice of a demand on the original debtor, to put the third possessor in delay. 4 *Mar. N. S.* 196. *Code of Practice,* 726, 7. 1 *La. Rep.* 410.

3. The transfer of the judgment and subrogation of Sprigg to Miller's rights, by Major Thomas, was made without proper and legal authority.

4. The power of attorney under which Thomas acted, did not authorise alienation and subrogation. *Louisiana Code,* 2965, 6.

5. A power to make a conventional subrogation, must be special and express. *La. Code,* 2156.

6. The power of attorney could not be received in evidence until proved; Maj. Thomas was an incompetent witness to prove it, on the score of interest, having a fee depending upon the event of the suit, and ought not to have been admitted. *La. Code,* 2260. 1 *Dallas,* 62.

PORTER, J., delivered the opinion of the court.

This is an action commenced by the assignee of a mortgage, to enforce it on property in the hands of a third possessor. The petition contains a prayer that the defendant be condemned to deliver up the property, or pay the amount due.

The answer presents a general denial; a plea of payment; an averment that the transfer of the mortgage was made by a person not duly authorised to alienate it: and, lastly, that the plaintiff paid no consideration for the debt, but, on the contrary, that he acquired it through fraud.

The proceedings throughout, took the form of the *juicio ordinario,* and the cause was submitted to a jury, who found a verdict in favour of the plaintiff, on which verdict the court rendered a judgment, similar to that given in a personal action, where the plaintiff establishes the debt sued for. From that judgment the defendant has appealed.

WESTERN DIS
October, 1833.

SPRIGG
vs.
BEAMAN.

An objection has been taken in this court, that there is not annexed to the petition an oath, that the debt is justly due, and unpaid; and that payment has been in vain demanded thirty days before suit was brought.

This objection should have been presented as an exception in the court of the first instance, and should have been pleaded in *limine litis.* It is foreign to the merits, and was waved by an answer embracing the general denial, a plea of payment, &c.

It is next urged that the evidence of a demand on the original debtor is insufficient, as the return by the sheriff of *nulla bona,* is made on an execution which was illegal and void. The nullity, it is contended, arises from the plaintiff having issued the execution in the name of the judgment creditor, though the judgment had been already conveyed to the petitioner, and in support of this proposition, observations which fell from the court in the case, *Gray vs. Baldwin,* are principally relied on. The remarks then made, do certainly sustain the ground now taken, but they were not necessary to a decision of that case, and upon an attentive consideration of the matter, we are satisfied they are erroneous. The true principle, we take it, is settled in the case of *Cox vs. Baldwin.* The judgment creditor, it cannot be doubted, might expressly confer such a right on his assignee. If the legal subrogation be as extensive as that which is express, and we think it is, then every right which the creditors possessed, passes by the act of payment to him by whom that payment is made. 4 *N. S,* 196, 1 *Louisiana Reports,* 401.

On the point now under notice, a further consideration was pressed on us. The sheriff returns that the defendant had left the parish, that he could find no property belonging to him, and that the plaintiff could not show any. Reference is made to the 726th and 727th articles of the *Code of Practice,* to show that a demand must be made of the debtor, before a return of *nulla bona.* To this doctrine we accede, if it be possible to make the demand, but if the debtor

*Margin notes:*

In an hypothecary action, the defendant cannot, after the general denial has been pleaded in the court of the first instance, first raise the objection on appeal, that the oath as to the debt is not unnexed to the plaintiff's petition; and that payment has been in vain demanded thirty days before the institution of the suit.

A surety who pays and is subrogated to the right of the creditor against the principal debtor, may legally issue execution in the name of the judgment creditor.

In the assignment of a judgment the legal subrogation are of equal extent, and every right which the creditor possessed passes by the act of payment to him by whom that payment is made.

WESTERN DIS has removed from the baliwick of the officer before the writ
October, 1833.
comes into his hands, the demand cannot be made by him,
.SPRIGG
vs.          and the ulterior rights of the creditor cannot be defeated by
BEAMAN
the debtor absconding.   The code in the articles cited, gives
Personal de-
mand on the  the general rule, and leaves it open by the exceptions which
debtor, previous
to bring.ing the  accompany all laws, and which necessarily grow out of cir-
hypothecary ac-
tion against the  cumstances that are inseparable from the affairs of men.
'third possessor,
will not be requir-
ed where the  *Lex neminem cogit ad vana seu impossibilia.*
debtor has ab-
sconded. A re-    On the trial of the cause, the plaintiff offered his counsel
turn by the sheriff
of *nulla bona*, is  as witness, he was objected to on the ground that he was
sufficient.
interested in the event of the suit, and was interrogated on
his *voir dire*, to establish that interest.   He swore "that he
had not stipulated any particular fee with his client, but
expected to be paid for his legal services; that it was his
habit, when he had not stipulated for his fee, to charge less,
should he fail in the cause, than if he were to succeed; and
that he would feel bound by his rule of conduct, to apply it
to this case."   We think the judge did not err.   We are
inclined on all occasions, where the strict rules of law do not
controul us, to favour the admission of testimony, and leave
the credit to be weighed by those who are required to decide
An attorney,in-  on it.   The correct rule, as we understand it, is, that the
terrogated as a
witness in a cause  interest which disqualifies a witness, must be a legal interest.
upon his *voir
dire*, swore "that  The case cited in argument, is one of many which has
he had not stipu-
lated any particu-  been decided in the United States on this subject.   It shows
lar fee, but ex-
pected to be paid  that in that instance, an honorary interest excluded the
for his legal ser-
vices, and that it  witness.   The authorities in our sister *states conflict*, though
was his habit,
when he had not  they preponderate in favor of the proposition, that an interest
stipulated for his
fee, to charge less  which is not legal, will disqualify a witness.   To produce
should he fail in
the cause, than if  that effect in England, the interest must be direct and legal.
he we e to suc-
ceed. and that he  In the instance before us, though the witness felt the obliga-
would feel bound
by his rule of con-  tion which his habits of business had imposed, to vary his
duct to apply it in
this case." It was  charge for compensation with the event of the suit, there was
held by the court
.that he was ad-  surely no legal obligation on him to do so.   The legal
missible as a wit-
ness for his client.  responsibility of the client was to pay him the value of his
services, and this value was to be tested by the labour and
pains bestowed on the cause, and the degree of responsibility
incurred, not by the success which attended his efforts.   The

physician who conquers a disease, is in law entitled to no
more remuneration, than when he is baffled by it and sees
all his exertions fruitlessly terminate with the loss of his
patient's life. *Starkie on Evidence, part 4, 746, 747, and notes
to 747. Phillips on Evidence, 63.*

There is another bill of exceptions taken to the opinion of
the judge refusing to admit the original debtor as a witness,
on the part of the defendant. The witness had a direct
interest in the cause, and a legal interest too, for if the
plaintiff succeeded in the action, the witness was responsible
in an action of warranty to the defendant, who had purchased
the property at a sale, under a writ of execution. *See
Code of Practice, 711.*

*A debtor who is liable in warranty, if the plaintiff succeeds against his vendee, has a direct legal interest, which renders him incompetent to testify in the cause.*

The plaintiff became the assignee of the mortgage under
a transfer made by an attorney, who was empowered "to
arrange, settle and receive the amounts of a claim due me
by G. C. Russell, and which is at this time in the hands of
my said attorney, hereby clothing him with full power to do
any thing in relation to said claim that he may think proper,
or take any steps for the security thereof that he may think
advisable."

It is contended, that the power did not authorise the
transfer, because a transfer is an alienation, and by our law
the authority to sell or to buy, must be special and express.
The authority to collect a note, necessarily implies the
power to extinguish the right of the creditor in it, and
whether the payment be made by the debtor or any other
person by which this extinction is produced, is a matter of
no importance, provided the attorney, as in the case before
us, expressly stipulated that the transfer was made without
recourse to, or liability of, his client. The act of the agent,
we, indeed, think was in exact compliance with the power
which authorised him *to take any steps for the security of
the debt.*

*The authority to collect a note, necessarily implies the power to extinguish the right of the creditor in it, and whether the payment by which this extinction is produced be made by the debtor or any other person, is a matter of no importance, provided the attorney expressly stipulates that the transfer is made without recourse to his client.*

It is not objected that the transfer did not convey the right
of mortgage, because by the act which evidences it, the
plaintiff is subrogated to all the rights and privileges of the
creditor; and rights and privileges, it is said, are different

from and do not include mortgages. In support of this proposition, we are referred to the *Louisiana Code*, 2156, which declares that the subrogation is conventional when the creditor subrogates the person paying him, in his rights, actions, privileges and mortgages. It is further urged that the use of these four words, show clearly that they have all a different meaning, and that the use of the words actions, mortgages and privileges were unnecessary, if rights included them. This argument pays a compliment to law makers, which we are afraid they are not always entitled to. It supposes that they never use words which are unnecessary or superfluous. Our experience teaches us not to adopt such a presumption, and that in legislation, as well as in other matters, there is often an useless employment of many words to express the same idea. The case before us is a strong

*The word "rights," in Louisiana Code, art 2156, embraces every thing included in the following words, "actions, privileges and mortgages."*

example of the kind. It is very clear that the word *rights*, embrace the other things enumerated. We must come to that conclusion, unless we adopt the absurd one, that a mortgage or privilege was not a right which belonged to the creditor.

These opinions render it unnecessary to express any on the third bill of exceptions, taken to the judge's charge to the jury.

*If an absolute judgment be rendered when the petition prays only for a conditional one; it is good ground for reversal.*

We think the judgment of the court below, here should be reversed; it is absolute for the payment of money, when it should, in pursuance of the prayer of the petition, have been in the alternative.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and it is further ordered, adjudged and decreed, that unless the defendant shall within ten days after the notification of this judgment, pay to the plaintiff the sum of five hundred and seventy-six dollars and sixty-four cents, with interest, at eight per centum per annum, from the 1st of January, 1830, on five hundred and twelve dollars and twenty-seven cents, and costs in the court below, that then a writ shall issue for the seizure and sale of the negroes

mentioned in the petition, to satisfy the sum now decreed to be due to the plaintiff; and, it is further ordered, that the costs of appeal shall be borne by the appellee.