On January 7, 1942, T.G. Shaw, trustee, instituted proceedings by executory process against Sloan Wells to foreclose a chattel mortgage in the principal amount of $1,300, granted on October 17, 1941, covering certain oil well equipment located in Bossier Parish, Louisiana. Under said proceedings, the property was sold at public sale on March 14, 1942 to T.G. Shaw for the amount of $403.25 after the deduction of costs. On March 9, 1942, John Talley filed a petition of intervention and third opposition in which he alleged that he was the holder and owner of a lien for hauling the oil well equipment, etc., to the lease in the amount of $367.13, and claimed his lien should be paid out of the proceeds received from the sale by preference and priority over all other persons or claims whatsoever.
In answer to the petition of intervention and third opposition, T.G. Shaw, trustee, *Page 388 
alleged that in addition to the chattel mortgage forming the basis of this proceeding, he is the holder of a lien in the principal amount of $435.60, which lien operates against Sloan Wells and any and all equipment owned by him and is in favor of him as subrogee by virtue of payments made by him to certain laborers described in the affidavit of lien filed in the mortgage records of Bossier Parish, Louisiana; that he stands in the place and stead of the laborers he paid and, accordingly, his lien rights as subrogee of the laborers are superior to the claims of any and all persons.
The case was tried below on these issues and the lower court found that both parties had proved their liens and that the labor lien claimed by T.G. Shaw, trustee, outranked the hauler's lien held by Talley. It awarded both judgment in the amount prayed for and from this judgment intervenor and third opponent Talley has perfected this appeal.
Mr. Talley, the intervenor, proved his account for hauling, item by item, as well as the dates the services were rendered and the amounts due, totaling $367.13, for which he has a lien against the proceeds derived from the sale of the property upon which his lien rested, under Act 145 of 1934, as amended by Act 100 of 1940. Under these acts, a lien granted for hauling is second in rank to the lien granted laborers, therefore, if T.G. Shaw, trustee, has established his lien as subrogee of the laborers, it follows his lien against the funds derived from the sale of the equipment will be given preference and priority over the lien held by Talley.
T.G. Shaw, trustee, entered into a contract with Sloan Wells whereby Wells agreed to drill an oil well on property on which Shaw, trustee, owned a lease. Some trouble developed which prevented the completion of the first well, and the derrick was skidded over for a short disstance and another well drilled. We conclude from Wells' testimony that he drilled several wells for Shaw, trustee, however, it was on the second well that Shaw, trustee, claimed he paid the laborers and was subrogated to their lien, under Article 2161 of the Revised Civil Code. His claim that he paid the labor is based upon a letter addressed to Sloan Wells, dated December 17, 1941, in which he said, —
"We enclose herewith checks covering unpaid labor on the Kendrick No. 1, as per list furnished by you and figured on the basis shown below."
He then lists each check showing the name of the laborer and the amount, and continues his letter as follows:
"You will note we have made a total deduction of $4.40 covering Federal Old Age Benefit Tax. You will, of course, handle this item upon your own records, however, the deduction has been made by us just as though you were paying these employees by your own checks.
"You will note that we are also enclosing our check No. 3859 to Mrs. C.D. Murff covering the board bill of the above workmen as stated.
"Kindly deliver the above checks at your earliest convenience so that no unnecessary action will be taken by any of these men that may delay you in proceeding with the drilling of the Kendrick No. 1.
"Mr. Shaw tells me that in your conversation last evening you stated that you would immediately have the boiler repaired and proceed with the drilling of this well. I believe his instructions to you were that you proceed to the bottom of the contract depth of 2000' rather than to core the original points discussed with you, and that an electrical survey would be taken of the well after this depth has been reached.
"In this connection, I wish to again mention the necessity of our securing drilling reports from you either daily or every other day so that we can be kept informed, without constant communication by telephone.
"With kindest regards, I remain."
He also relies upon a document executed by his secretary, in which he set out that he had paid the laborers in order to protect his junior chattel mortgage, and claimed to be subrogated to the laborer's lien. This document was placed of record January 7, 1942.
On the trial of the case, Shaw, trustee, offered only the additional evidence of Sloan Wells, who testified positively that the money paid by Shaw, trustee, to the laborers employed by him was advanced to him by Shaw. He testified, —
"Yes, Mr. Shaw was to let me have this money and charge it to my account. He did not advance me the money but was to charge it to my account." *Page 389 
The checks were made to the individual laborers, signed by T.G. Shaw, trustee, and sent to Sloan Wells who delivered the checks to the laborers. Sloan Wells testified also that Shaw, trustee, owed him money for setting casing in the wells, which he had never been paid. There is no testimony in the record to contradict that given by Sloan Wells.
It was incumbent upon Shaw, trustee, to show by a preponderance of the evidence that he paid this labor for his own account and not for the account of Sloan Wells before he would be subrogated to the lien rights of the laborers, and a mere declaration placed of record by Shaw's secretary to preserve his alleged lien is not in itself sufficient proof. We therefore conclude that Shaw, trustee, has failed to establish that he has a laborer's lien on the funds derived from the sale under execution of the chattel mortgage and now held by the Sheriff of Bossier Parish, Louisiana.
It therefore follows that the part of the judgment of the lower court recognizing the lien and privilege as a furnisher of labor in favor of T.G. Shaw, trustee, and ordering that he be paid out of the proceeds of the sale of the property sold by preference and priority over all persons whomsoever, is reversed, and that part of the judgment in favor of John Talley is amended by striking therefrom the words "except the hereinabove claim of T.G. Shaw, Trustee"; and in all other respects the judgment in favor of John Talley is affirmed. Costs to be paid by T.G. Shaw, trustee.