52 So.2d 311 (1951)
MOTORS INS. CORP.
v.
EMPLOYERS' LIABILITY ASSUR. CORP., Limited.
No. 3383.
Court of Appeal of Louisiana, First Circuit.
April 30, 1951.
*312 J. Minos Simon, Lafayette, for appellant.
Helm & Simon, Robt. E. Johnson, New Iberia, for appellee.
ELLIS, Judge.
The plaintiff, Motors Insurance Corporation, as subrogee of its insured, one Everett Luke, filed this suit against the Employers' Liability Assurance Corporation, Ltd., the liability insurance carrier on a Dodge Coupe being operated by one William C. Smith, as the result of an intersectional collision between Luke's automobile and the Dodge Coupe on October 19, 1947 at approximately 4:45 P.M., plaintiff having paid the amount for which it is suing, towit: $421.99 to its insured.
Plaintiff in its petition alleged that Smith was negligent for the following reasons:
1. That the said William C. Smith failed to keep a proper lookout at all times;
2. That he failed to see what he should have seen under the circumstances;
3. That he was operating his vehicle at an excessive rate of speed, with a wanton disregard for the safety of others;
4. That he failed to stop before entering a public highway and failed to yield the right-of-way to the said Everett Luke, which right-of-way he enjoyed by virtue of the superiority of the road on which he was traveling and by virtue of the fact that the said Luke was approaching said intersection from the right hand side of William C. Smith.
In the alternative, plaintiff plead the doctrine of the last clear chance, and, in addition, contended that Luke had preempted the intersection.
Attached to plaintiff's petition is the subrogation contract.
Defendant denied any negligence upon the part of Smith and set forth that the proximate cause of the accident was the negligence of Luke, and in the alternative plead the doctrine of last clear chance and contributory negligence on the part of the plaintiff.
The case was duly tried and written reasons were given for judgment to be signed in favor of the plaintiff as prayed for. However, prior to formal judgment being read and signed, an exception of no right of action based upon the following reasons was filed:
"1. That Act No. 55 of 1930, LSA-RS 22:655 grants no right of direct action to the Motors Insurance Corporation; that the right of direct action is limited to an injured person or to his or her heirs; that plaintiff not being in either category has no right of action on account of the payment which is claimed to have been made."
"2. That Act No. 195 of 1948, LSA-RS 22:655, grants no right of direct action to The Motors Insurance Corporation; that the right of direct action is limited to an injured person or to his or her heirs; that plaintiff not being in either category has no right of action on account of the payment which is claimed to have been made."
Defendant also filed an application for rehearing in order for the Court to pass upon the exception, and also set forth its contentions as to the incorrectness of the judgment rendered by the district court.
*313 The plaintiff complained that the exception was filed too late, which complaint was overruled by the District Court based on the following four cases: Hand v. Coker et al., La.App., 11 So.2d 272; Doll v. Dearie et al., La.App., 41 So.2d 84; Bartholomew v. Impostata, La.App., 12 So.2d 700; Gast v. Gast, 197 La. 1043, 3 So.2d 173.
We find no error in this ruling as the law and jurisprudence is well settled that exceptions of no right and no cause of action may be filed at any time prior to a definitive judgment.
The district court then granted the rehearing and sustained the exception of no right of action under the authority of World Fire & Marine Insurance Company v. American Auto. Insurance Company, La. App., 42 So.2d 565, decided by the Second Circuit Court of Appeals.
From the judgment of the District Court in sustaining the exception the plaintiff has appealed.
There is no doubt that the case cited, supra, and followed by the District Court does squarely hold that only the injured person or his or her heirs, at their option, shall have the right of direct action against the insurer.
In the case at bar, we are dealing with a conventional subrogation in which it is expressly stated that Luke, subrogor, "hereby expressly agrees that the said Motors Insurance Corporation shall be automatically vested with all rights and causes of action that the said undersigned has against any person, persons, or corporation whomsoever for damages to the insured property hereinabove referred to. * * *"
Articles of the Civil Code pertinent to the issues are as follows:
2159, C.C.: "Subrogation to the right of a creditor in favor of a third person who pays him, is either conventional or legal."
2160, C.C.: "When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment."
It is settled in our jurisprudence that the word "rights" as used in this article embraces everything included in the following rights: actions, privileges and mortgages. See Sprigg v. Beaman, 6 La. 59; King v. Dwight, 3 Rob. 2.
It has also been held that there is a difference in a subrogation and an assignment.
1. "Subrogation" means substitution, not assignment or transfer. Reconstruction Finance Corporation v. Teter, 7 Cir., 117F.2d716,719.
2. "Subrogation" and "assignment" have a well established difference and "subrogation" means substitution, not assignment or transfer, and differs from "assignment", since it is an act of law and a creature of equity, depending not upon contract, but upon principles of equity and justice. Wojciuk v. U. S., D.C., 74 F.Supp. 914, 916.
3. "Subrogation" arises by operation of law where one having a liability or a right of fiduciary relationship in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by creditors whom he paid. North v. Albee, 155 Fla. 515, 20 So.2d 682, 157 A.L.R. 490.
4. The principle of "subrogation" is a principle of equity, not dependent upon state laws and is closely akin to, if not a part of the equitable principle of "restitution" and unjust enrichment. Western Casualty & Surety Company v. Meyer, 301 Ky. 487, 192 S.W.2d 388, 390, 164 A.L.R. 769.
5. "Subrogation" has been defined as the right of a person secondarily liable in person or property for the debt or obligation which he is compelled to pay or discharge, to occupy the principle creditor's position as to any lien preference or other special advantage possessed by the latter, at the time of such payment. Aetna Casualty & Surety Company v. Whaley, 173 Va. 458, 3 S.E.2d 395, 397.
We find in 46 C.J.S., Insurance, § 1209, p. 157, the following statement with authorities cited therefor: "An insurer of an automobile against accidental collision, who pays to insured the amount of the damage, *314 is subrogated to insured's rights of action against third persons who may be responsible for the loss. This subrogation takes place by operation of law and irrespective of any express stipulation to that effect in the policy". Automobile Ins. Co. v. Luther Jones Truck Line, La.App., 9 So.2d 870; Stanley v. Ritchey Grocer Company, La. App., 167 So. 124; Union Indemnity Company v. Crow, 14 La.App. 197, 127 So. 35, Reheard 14 La.App. 197, 129 So. 409.
This principle of law has been recognized by our courts and established in our jurisprudence in many cases. In Durac v. Widow Ferrari et al., 25 La.Ann. 80, it was stated: "* * * This subrogation extends as well to the accessory as to the principle obligation, and the subrogee acquires all of the remedies as well as all the rights of the party to whom he was subrogated. * * *"
In International Paper Company v. Arkansas & Louisiana M. R. Co., reported in La.App., 35 So.2d 769, 771, the court stated: "* * * As a general rule the subrogee is figuratively put in the shoes of the creditor which means that all laws applicable to the latter, in the enforcement of rights and remedies, apply with equal force to the former. 50 Am.juris. 752-753, Sections 110 and 111."
It is, therefore, clear that the act of subrogation herein placed the plaintiff as subrogee in the shoes of the creditor and subrogor, Luke, and the subrogee became substituted for the subrogor to all of the latter's legal rights and remedies that Luke had against the defendant insurer.
There is nothing in Act No. 55 of 1930 which expressly prohibits the subrogation by the injured party of the right to a direct action therein granted to the latter, nor any legal reason which would prohibit a subrogation of this right as expressly granted under the articles of the Civil Code and by the established jurisprudence. Subrogation is in effect a sale, and only the sale of a litigious right is prohibited under our law. No question of a litigious right has been raised or mentioned in the present case, nor apparently was it a question in the case of World Fire & Marine Insurance Co. v. American Auto. Insurance Co. supra.
It is apparent that Act No. 55 of 1930, while it gives the injured party the right of a direct action, as stated, it does not expressly prohibit the subrogation of this right. This is true generally of all rights, action or remedies which unquestionably have been recognized as subject to subrogation. In the case of Shaw v. Wells (Talley, Intervenor), La.App., 17 So.2d 387, 388, which was decided by the Second Circuit Court of Appeal, a chattel mortgage was foreclosed on some oil well equipment owned by the defendant. After the property was sold, a man named Talley filed an intervention in which he asserted his lien for hauling certain oil well equipment, etc., that was sold and claimed that his lien outranked the chattel mortgage. In answer to the intervention, the chattel mortgage holder Shaw alleged that in addition to his chattel mortgage, he held a lien also against all of the equipment sold, in favor of him as subrogee, by virtue of payment made by him to laborers who had worked on the well, and whom he had paid, and that, as such, this labor lien outranked the hauler of the equipment, by virtue of Act No. 100 of 1940. Act No. 100 of 1940 provides in part as follows: "Any persons, firm, corporation or association of persons" who shall perform any labor, services in connection with the servicing or drilling of a well, shall have the highest ranking lien. The Court, in discussing the ranking of the liens made the following statement: "Under these acts, a lien granted for hauling is second in rank to the lien granted laborers, therefore, if T. G. Shaw, trustee, has established his lien as subrogee of the laborers, it follows his lien against the funds derived from the sale of the equipment will be given preference and priority over the lien held by Talley."
In the above case, the Court clearly recognized that if Shaw proved that he had paid the laborers and secured a subrogagation to their rights that he was entitled to all of the remedies which those laborers had, which included the right to outrank the hauler of the supplies to the oil well. Also in this case no provision was made *315 for the subrogee or assigns by the statute under which the subrogee was asserting his prior claim. This was true for the reason that by the mere definition of "subrogation" the subrogee was entitled to all of the rights and remedies which his subrogor enjoyed.
Another similar case decided by the Supreme Court of Louisiana is Colonial Creosoting Company v. Perry et al., 169 La. 90, 124 So. 182, wherein the court held, quoting from the syllabus: "Where bank gave subcontractor money to pay laborers, and payment was thereupon made, and laborers signed assignment and subrogation, which was returned to the bank, bank had claim against contractor and contractor's surety by virtue of [its] subrogation, within terms of Civ.Code, art. 2160."
The conventional subrogation in the case at bar is full and explicit, and under our law the subrogee is substituted in the place of the subrogor in all of his rights, action and remedies, and Act No. 55 of 1930 merely granted an additional right of action to an injured party which a subrogee is entitled to exercise as the substitute of the subrogor. In other words, the right of action granted by Act No. 55 of 1930 was in the same category as all other rights belonging to the subrogor, which are acquired by the subrogee upon compliance with the law as regards subrogation.
As to the World Fire & Marine Insurance Company case, supra, it doesn't seem that the case touched at all upon the rights of a subrogor. It will be noted that the Court in that case stated, conceding the force of plaintiff's argument, that a right of action is property and therefore may be assigned, that it does not follow that the right of assignment can be exercised in violation of the plainly restricted provision of the statute at issue. It would appear to us that it was not a question of a right of action being property or assignment but one of whether the right of action granted to the injured person by Act No. 55 of 1930 could be subject to sale or subrogation. We are of the opinion that the answer is in the affirmative and that it does follow that all rights including the one in question of the conventional subrogation in this case could be exercised by the subrogee and it would not be in violation of the statute at issue, for the subrogee is not exercising the right by virtue of the statute because he is given no such right under the statute, but is exercising the right by virtue of the articles of the Civil Code and the established jurisprudence of this state which hold that he is substituted for the subrogor in all of the latter's rights, actions and remedies.
For these reasons, we are of the opinion that the judgment of the District Court should be reversed and it is so ordered, and the exception of no right of action is hereby overruled.