395 So.2d 849 (1981)
TRAVELERS INSURANCE COMPANY, Plaintiff-Appellee,
v.
PARAMOUNT DRILLING CO., INC., et al., Defendants-Appellants.
No. 14414.
Court of Appeal of Louisiana, Second Circuit.
February 16, 1981.
*851 Lunn, Irion, Switzer, Johnson & Salley by Frank M. Walker, Jr., Shreveport, for defendant-appellant, Paramount Drilling Co., Inc.
Theus, Grisham, Davis & Leigh, by Brian E. Crawford, Monroe, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
HALL, Judge.
Defendant, Paramount Drilling Company, Inc., appeals from a judgment of the district court ordering it to pay as contribution one-half of workmen's compensation benefits paid and to be paid by plaintiff, Travelers Insurance Company, insurer of Duggan Machine Company, to the widow of an employee of Duggan who was killed while doing welding work at the location of a well being drilled by Paramount. We affirm.
The trial court found that the welder was a general or regular employee of Duggan and a special or borrowed employee of Paramount. The court held that the lending and borrowing employers should share the compensation burden equally.
On appeal, Paramount contends that the welder was not its borrowed employee. Paramount argues that because a principal-contractor relationship existed between it and Duggan, it was a "statutory employer" under LSA-R.S. 23:1061,[1] and under the last paragraph of that section would be entitled to indemnity against Duggan for any compensation it might pay to the employee or his survivors. It is argued that since Paramount would be entitled to indemnification from Duggan for compensation paid by Paramount, it cannot be cast for contribution in favor of Duggan's insurer for compensation paid by it.
Despite scholarly discussions of what used to be the law or should be the law, it is firmly established that a lending employer and a borrowing employer are liable in solido for workmen's compensation benefits, regardless of whether the lending employer is engaged in the business of lending employees or is only a casual lender. As solidary obligors, each employer is entitled to contribution equal to one-half of the obligation from the other employer. Maryland Casualty Co. v. Liberty Mutual Ins. Co., 254 *852 La. 489, 224 So.2d 465 (1969); Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895 (1958); Lambert v. James A. Teague Rental Equipment, Inc., 278 So.2d 544 (La.App. 1st Cir. 1973), writ denied 281 So.2d 750 (1973); LSA-C.C. Arts. 2103, 2104.
In the Maryland Casualty Company case, the Supreme Court stated the issue as follows:
"The principal issue, however, relates to whether contribution is due between a special employer and a general employer which are solidarily liable to an employee for injuries occurring during special employment. Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895 (1958), concluded that such an employee may recover from either or both employers, and that they are solidary obligors as to him. Nevertheless, we are not here concerned with the relationship of the employee to the employers, but rather with the allocation of the ultimate loss as between the employers which were by law solidarily liable for the debt."
Resting its holding on the positive and unambiguous provisions of LSA-C.C. Arts. 2103[2] and 2104[3] regulating the relationship of solidary obligors among themselves, and rejecting arguments urging the applicability of LSA-C.C. Art. 2106[4] and public policy or equity theories under workmen's compensation law, the court held:
"Neither the general employer nor the special employer may claim indemnification or security from the other. They are solidary obligors as contemplated by Articles 2103 and 2104, and the plaintiff insurer, having paid the whole debt, may claim from the defendant insurer contribution of one-half of that amount."
In Malone & Johnson, Workers' Compensation Law and Practice (2d ed. 1980) § 58, 13 Louisiana Civil Law Treatise, the authors discuss the compensation law policy considerations mentioned and rejected in Maryland Casualty Company, but then conclude:
"Be that as it may, the current jurisprudential position has been to choose the simpler solution of having the lending and borrowing employer share the compensation burden equally, regardless of whether the lending employer is in the business of lending employees or not. This solution is not without its advantages. The primary advantage is that it eliminates the necessity of determining which lenders should be treated as vocational lenders and which as casual lenders. It also avoids the possibly dubious assumption that the vocational lender passes along the cost of his insurance premium to the borrower, which presumably the casual lender does not do. Further, if it is assumed that claims for contribution or indemnity are most often raised between insurers, it is difficult to see how any single insurer will be adversely affected over the long run, since most insurers offer coverage to both lenders *853 and borrowers. The present jurisprudential resolution of the issue thus at least offers simplicity and uniformity."
The indemnity provision of LSA-R.S. 23:1061 does not come into play or apply to cases where the solidary compensation liability of the two obligors, one a general employer and one a special employer, is based on an employer-employee relationship between each employer and the injured worker. It applies to cases where the solidary compensation liability of the two obligors is based on the principal-contractor-employee relationship outlined in Section 1061. Jones v. Southern Tupelo Lumber Company, 257 La. 869, 244 So.2d 815 (1971). Malone & Johnson, Workers' Compensation Law and Practice (2d ed. 1980) §§ 121 et seq., 13 Louisiana Civil Law Treatise.
In Jones, the Supreme Court held:
"The courts below correctly cast all of the defendants solidarily, for when an employee is entitled to compensation and under R.S. 23:1061 or R.S. 23:1063 has sued the principal or the principal contractor together with the contractor or subcontractor, the liability of such defendants is solidary. The purpose of these statutes is to expand financial responsibility and to prevent the evasion of the workmen's compensation law by the principal's or the principal contractor's interposing between himself and the employee an impecunious contractor or subcontractor. Under these statutes the claimant is entitled to proceed against the principal (or principal contractor) or the contractor (or subcontractor) or both as he chooses. The indemnification clauses, however, have the effect of finally imposing the loss of the principal or principal contractor upon the claimant's immediate employer."
For the purpose of facilitating payment of compensation benefits to an injured worker and to prevent avoidance of compensation liability by interposition of an independent contractor between the principal and a worker performing work in the principal's business, Section 1061 provides that where a principal contracts for work that is part of his trade, business or occupation, the principal shall be liable for workmen's compensation to any employee employed in the execution of the work as if the employee had been immediately employed by him. The section imposes compensation liability on the principal even though the injured employee is not an employee, general or special, of the principal. A fictitious "statutory" employer-employee relationship is created between the principal and the contractor's employee for compensation purposes.
Where compensation liability is based on this statute, the principal or so-called "statutory employer" is entitled to indemnity from any person, normally the contractor, who independently of this section would have been liable to pay compensation to the employee or his dependent. This special statutory provision operates as an express exception to the general codal rule of contribution among solidary obligors.
If the injured worker is a borrowed or special employee of the employer and, therefore, a true employee as distinguished from a statutory employee, the employer's liability for compensation is independent of this section. Since the employer's liability is not based on this section, the indemnity provision of the section is not applicable.
In Malone & Johnson, supra, the authors note that the relationship between a vocational lending employer and a borrowing employer is virtually indistinguishable from the relationship between principal and contractor, and should be similarly treated. The legislature has, however, provided for different treatment, and not without reason, as illustrated by the facts of the instant case. If the injured worker is a true employee of the borrowing employer, under the direction and control of the borrowing employer in doing the work which results in the employee's injury, then it is only reasonable that the borrowing employer pay one-half of the compensation benefits. On the other hand, if the injured worker is not *854 a true employee of the principal but is only a fictitious statutory employee not under the principal's direction and control, it is only reasonable that, as between the principal and the worker's true employer who directed and controlled the worker's activity, the true employer should pay the full amount of compensation.
Where a borrowed or special employee of the principal is a general employee of one with whom the principal has contracted, compensation liability of the principal might be based either on the employer-employee relationship or on the "statutory" employer-employee relationship provided by Section 1061. Our view is, however, that the provisions of Section 1061 are not to be applied, as between the employers, where an employer-employee relationship exists between both employers and the employee independent of the section. The more direct relationship and basis of liability should control insofar as sharing of responsibility between the employers is concerned.
The central and determinative issue in this case is, therefore, whether the welder was a special or borrowed employee of Paramount. The trial court correctly found that he was.
Pyatt was one of seven welders employed by Duggan Machine Company to go out into the field to perform welding services for others at drilling site locations. Part of Duggan's regular business was to furnish welders and equipment to persons or businesses in need of the temporary services of a welder. Paramount Drilling Company contacted Duggan requesting the services of a welder at a drilling site in Arkansas. Duggan supplied the welder, Pyatt, and also furnished his truck and welding equipment. Paramount was invoiced by Duggan at an hourly rate for the welder's services and equipment. Duggan paid the welder on an hourly wage basis.
The normal procedure was for the welder to check in each day at Duggan's office, punch in on the time clock, go to the well site, and then punch out at Duggan's at the end of the day. The welder's function at the well site was to "nipple up", a welding operation required for each drilling start-up, and to do various jobs that might come up. He was to be supervised by the tool pusher or other supervisory personnel of the drilling company. Duggan had no supervisory or other personnel at the well site. The drilling company had control of when the welder was to come to work and when he could leave. It could discharge him from the job at any time.
Pyatt reported to the well site on the date of the accident. According to Paramount's tool pusher, he gave Pyatt instructions on what was to be done, but did not have to stand over Pyatt while he was doing the work because Pyatt was an experienced welder and had worked for them before. Pyatt's duties were to nipple up and do any other required welding jobs or odd jobs that required welding or the use of a cutting torch. On the day of the accident, in the early afternoon, Pyatt was making a bell nipple. A truck load of casing was delivered to the well site, but the load had shifted during transit and the driver could not remove one of the chains holding the load in place. Paramount's tool pusher instructed Pyatt to cut the chain, and, specifically, to cut the length next to the hook. When Pyatt cut through the chain, the load of casing rolled off the truck and Pyatt was struck and killed by the heavy pipe.
Clearly, the welder was doing Paramount's business under the direct supervision and control of Paramount. Paramount's tool pusher assigned the tasks to be performed, including the specific work the welder was doing when he was killed. Paramount controlled when he came to work and when he could leave. It could discharge him from the job at any time. Pyatt was Paramount's special or borrowed employee, and Paramount was liable for workmen's compensation benefits as Pyatt's special employer.
In other cases decided under the workmen's compensation law, involving similar circumstances, the courts have held that the injured worker was a special employee of *855 the borrowing employer, was entitled to workmen's compensation benefits as such, and the workmen's compensation liability of the employers was to be shared equally. In the Maryland Casualty Company and Lambert cases, supra, the general employer furnished a crane and an operator (the injured worker) to the special employer who exercised supervision and control over the operator on the job.
Benoit v. Hunt Tool Company, 219 La. 380, 53 So.2d 137 (1951) and other tort cases cited by appellant, dealing with borrowed servant determinations in various tort contexts, are not apposite to this workmen's compensation case. Benoit dealt with the question of whether a lending employer should be held liable in tort to its regular employee under the theory that the employment relationship between the lending employer and its employee was suspended while the employee was working under the supervision of the borrowing employer. The court held that the employee was not the borrowed servant of the borrowing employer in the sense that it terminated his employment relationship with the general employer.
Vincent v. Ryder Enterprises, Inc., 352 So.2d 1061 (La.App.3d Cir. 1977) was a tort suit by a truck driver employed by Stooksberry who was injured as the result of the negligence of a welder regularly employed by Ryder who was working at the site of a well being drilled by Getty Oil Company. Ryder's attempt to escape liability for the negligence of its employee on an argument that the welder was a borrowed servant of Getty or Stooksberry and no longer was an employee of Ryder was rejected, as was the similar argument in the Benoit case. This determination under tort principles is not applicable to a determination of whether a worker is a borrowed or special employee for purposes of workmen's compensation liability. In Vincent the court also determined that the plaintiff truck driver was a statutory employee of Getty. The court was not presented with and did not pass on the issue of whether the negligent welder was either a borrowed employee or statutory employee of Getty.
Allen v. United States Fire Insurance Company, 222 So.2d 887 (La.App.2d Cir. 1969) was a tort suit by a welder in which the defendant asserted a defense of statutory employer and exclusivity of plaintiff's workmen's compensation remedy. The issue involved was whether the work being done was part of the defendant's regular business, which the court found was the case and sustained the defense. There was no issue or decision as to whether the welder was a borrowed employee of the defendant.
In Jones v. Frances Romero, Inc., 345 So.2d 1286 (La.App.3d Cir. 1977), the principal issue was whether the work being done by the welder's helper who was injured was part of the principal's regular business so as to make the principal a "statutory employer", barring the worker's tort claim against the principal. This issue was resolved in favor of the defendant principal. Incidentally, the court of appeal affirmed a jury verdict finding the worker to be a statutory employee rather than a borrowed employee, precluding a claim for contribution by the general employer's workmen's compensation insurer. The court noted the difficulty in determining the distinction between a borrowed employee and a statutory employee and found an adequate evidentiary basis for the jury's verdict. Because there are factual distinctions between the Jones case and the instant case and because of the lack of in-depth consideration of the issue, we do not regard the Jones decision as authoritative on the issue before us.
As pointed out earlier, an employee may be both a statutory employee and a borrowed or special employee. In either case, the employee is entitled to compensation from the principal or borrowing employer, as the employee's exclusive remedy, and it matters not which theory is applied insofar as the employee is concerned. However, as between the general employer and the special employer, contribution is due where compensation liability exists independent of LSA-R.S. 23:1061 under a special employer-employee relationship, and *856 indemnification by the general employer to the principal is applicable only where compensation liability is based solely on Section 1061.
Because Pyatt was the special employee of defendant Paramount, the provisions of Section 1061 do not come into play. Plaintiff is entitled to contribution from the defendant of one-half of the compensation benefits paid and to be paid.
For the reasons assigned, the judgment of the district court is affirmed at defendant-appellant's costs.
Affirmed.
NOTES
[1] "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
[2] "Art. 2103. When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi-contract, an offense, or a quasi-offense, the debt shall be divided between them. If the obligation arises from a contract or a quasi-contract, each debtor is liable for his virile portion. If the obligation arises from an offense or a quasi-offense, it shall be divided in proportion to each debtor's fault.

"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff."
[3] "Art. 2104. If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each.

"If one of them be insolvent, the loss occasioned by his insolvency must be equally shared amongst all the other solvent codebtors and him who has made the payment."
[4] "Art. 2106. If the affair for which the debt has been contracted in solido, concern only one of the co-obligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities."