## LIBERTY MUTUAL INSURANCE COMPANY
### v.
## GULF OIL CORPORATION, et al.
### Civ. A. No. 82–2102.

United States District Court,
E.D. Louisiana.

March 17, 1983.

Thomas C. Cowan of Christovich & Kearney, New Orleans, La., for plaintiff.

James R. Sutterfield, Camp, Carmouche, Palmer, Barsh & Hunter, New Orleans, La., for defendants.

CHARLES SCHWARTZ, JR., District Judge.

This matter was submitted to the Court upon agreement of the parties to waive oral argument and trial before the Court. After consideration of the record herein, the briefs of counsel, and the law, the Court finds as follows.

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

Plaintiff, Liberty Mutual Insurance Company (Liberty Mutual) filed suit on April 19, 1982 in the 25th Judicial District Court for the Parish of Plaquemines against Gulf Oil Corporation and Gulf Oil Exploration and Production Company (Gulf). In its petition for damages, Liberty Mutual alleged that Gulf was liable to it for any and all amounts that Liberty Mutual may be liable for arising out of the death of Larry Stutts, Jr. (Stutts), who was employed by Liberty Mutual's insured. Stutts died while working on an oil platform owned and operated by defendant in Grand Bay, Plaquemines Parish. As a result of the death of Stutts, Stutts' dependents filed two lawsuits against Liberty Mutual pursuant to the Louisiana Worker's Compensation Statute, La.R.S. 23:1231. Liberty Mutual settled these law suits as hereinafter set out. In its suit against Gulf, Liberty Mutual alleged liability of Gulf under a negligence theory of law, and demanded indemnification. In the alternative, if no negligence on the part of Gulf was found, Liberty Mutual alleged that Gulf was liable for contribution based on the theory that Gulf was the "special" or "borrowing" employer of Stutts.

The suit filed by Liberty Mutual was removed from the 25th Judicial District Court for the Parish of Plaquemines and is properly before this Court pursuant to 28 U.S.C. § 1441. The parties stipulated as follows:

1. That at all times pertinent hereto, Larry Stutts, Jr., was a direct employee of Davis & Sons, Inc. and that he died while working at Gulf Oil Corporation's compressor unit station located in Grand Bay, Parish of Plaquemines, State of Louisiana, on or about April 28, 1981.

2. That Larry Stutts, Jr. was supplied to defendant as a result of a contract between his direct employer, Davis & Sons, Inc., and defendant, whereby Davis & Sons, Inc. furnished personnel for manual labor to defendant.

3. That defendant furnished transportation to the deceased to its compressor station. That Larry Stutts, Jr. died subsequent to his arrival at the said compressor station on said date.

4. That Larry Stutts, Jr.'s duties at the compressor station involved checking the compressor units continually to make sure they were running smoothly throughout the shift from 4:00 p.m. to 11:00 p.m.

4.a. Larry Stutts, Jr. and a co-worker were relieved at the end of their shift by another two-man crew, one of which was a direct Gulf employee.

5. That at the time of Larry Stutts, Jr.'s disappearance, he was the only person present on the compressor station.

6. That Larry Stutts, Jr. received his instructions and orders on what to do on the compressor station from Gulf employees.

7. That in order to get paid by Davis & Sons, Inc., Larry Stutts, Jr. had to have his time sheets duly signed by an authorized Gulf employee.

8. That Liberty Mutual Insurance Company sent a certificate of insurance dated January 12, 1982, signed by William W. Mancuso, authorized representative of Liberty Mutual certifying to certain coverage provided with respect to Davis & Sons, Inc. for the period expiring on October 26, 1981.

9. That the certificate of insurance in question was prepared by Liberty Mutual Insurance Company.

10. That the document was furnished to Gulf Oil Exploration and Production Company by Liberty Mutual Insurance Company.

11. That as a result of the death of Larry Stutts, Jr., Liberty Mutual Insurance Company has paid out to Larry Stutts, Sr., alleged father of the deceased, $30,000.00.

12. Said payment to Larry Stutts, Sr. was made as a result of a ruling in the matter of "Larry Stutts, Sr. vs. Liberty Mutual Insurance Company," Case No. 49,-499, 10th Judicial District Court, Natchitoches Parish, Louisiana, affirmed in the Third Circuit Court of Appeal, State of Louisiana, Case No. 82–51.

13. Said payment representing $20,000 as payment pursuant to 23:1231 as amended and the balance representing an award for interest, penalties and attorney's fees.

14. Also as a result of the death of Larry Stutts, Jr., plaintiff has paid $22,-000.00 in settlement of a Louisiana Workmen's compensation lawsuit filed by "Ms. Suzie Stutts Reed vs. Davis & Sons, Inc., et al.," Case No. 23–616, Div. "A," 25th Judicial District Court, Parish of Plaquemines, State of Louisiana.

15. Said settlement made based on Louisiana Revised Statute 23:1231, as amended, and as a result of the above mentioned lawsuit entitled "Larry Stutts, Sr. vs. Liberty Mutual Insurance Company."

16. That no upward adjustment in premium to be paid to Liberty Mutual by Davis & Sons for a waiver of subrogation in favor of Gulf Oil Exploration and Production Company was ever made.

On the basis of these stipulations, and the record, Liberty Mutual contends that it has a right to contribution from Gulf, arguing that Gulf was a "special" or "borrowing" employer of the deceased. Although Liberty Mutual had initially alleged a negligence cause of action against Gulf, it did not pursue that course. Instead, it chose to rely

on its allegation that Gulf owes contribution as a solidary obligor. Gulf denies this allegation and contends that it was a "statutory" employer of the deceased as that term is defined in La.R.S. 23:1061.[1] Pursuant to that statute, a "statutory" employer is entitled to indemnification from a contractor such as Davis & Sons, Inc.; Gulf Oil argues that since it would be entitled to indemnification for compensation paid by it as "statutory" employer, it cannot be held for contribution in favor of Liberty Mutual.

## CONCLUSIONS OF LAW

■ The decision in this case depends upon whether Gulf is to be construed as a "borrowing" "special" employer or as a "statutory" employer. The application of the respective standards necessary to such a determination depends upon the status of the employer and its posture in the law suit. A lending employer and a "borrowing" employer are liable in solido for workers' compensation benefits; as solidary obligors, each employer is generally entitled to contribution equal to one-half of the obligation from the other employer. *Travelers Ins. Co. v. Paramount Drilling*, 395 So.2d 849 (La.App.2d Cir.1981), and cases cited therein. This solidary liability is based on an employer-employee relationship between each employer and the injured worker. The indemnity provision of La.R.S. 23:1061 applies to those cases where the liability of the two obligors is based on the principal-contractor-employee relationship outlined in that section. Where compensation liability is based on this statute, the principal, or "statutory" employer is entitled to indemni-

ty from any person, normally the contractor, who independently of this section would have been liable to pay compensation to the employee or his dependent. *Travelers,* supra.

■ An employee may be both a "statutory" employee and a "borrowed" or "special" employee. In either case, the employee is entitled to compensation from the principal or "borrowing" employer, as the employee's exclusive remedy. However, as between the general employer and the "special" employer, contribution is due where compensation liability exists *independent* of La.R.S. 23:1061, and indemnification by the general employer to the principal is applicable only where compensation liability is based *solely* on Section 1061. *Travelers,* supra (emphasis supplied). The fundamental purpose behind the liability of a principal to the employees of a contractor is to prevent principals from contracting out their work in order to evade liability for workers' compensation benefits to the employees who actually perform the principal's business by interposing an impecunious independent contractor between the principal and his employee. *Williams v. Shell Oil Co.,* 677 F.2d 506 (5th Cir.1982). Section 1061 has generally been invoked in suits where the injured worker is claiming a tort remedy against a defendant who raises the exclusivity of compensation as a defense. Where a principal-contractor-employee relationship exists, section 1061 serves to limit the exposure of the "statutory" employer, the principal, to workers' compensation.

1. § 1061. Principal contractors; liability

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work, or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

■ It is the status of the employer that is controlling and determines liability for the allocation of the ultimate loss due the plaintiff. That status determines whether a plaintiff may proceed on a negligence theory or be precluded from so doing. Thus, where the plaintiff sues an employer in tort under a negligence theory which is defended and won on the basis that the employer is a "statutory" employer, then the liability of the employer is in workers' compensation, but that employer is owed indemnification under La.R.S. 23:1061. Where the basis of the alleged liability is workers' compensation and the plaintiff sues those employers with whom he had an employee-employer relationship, then the liability becomes a solidary one between those employers.

■ Here, the deceased's dependents brought an action in workers' compensation against Davis & Sons and its insurer, Liberty Mutual. No negligence claim was brought against either of those parties or against Gulf by the deceased's dependents. While Liberty Mutual alleged a negligence claim against Gulf in its suit, it abandoned that claim and sought relief only under its workers' compensation claim for contribution. Having abandoned its claim of negligence, Liberty Mutual cannot now claim Gulf was not the "statutory" employer of the deceased since the determination of liability as a "statutory" employer is applicable only where compensation liability is based solely on Section 1061. *Travelers,* supra. Liberty Mutual having made the decision to pursue only its claim for contribution, the only issue before the Court is whether both Gulf and Davis & Sons, Inc. enjoyed an employee-employer relationship with the deceased.

■ The test to be employed in determining the special employer's liability for compensation is the control exercised over the special employee in the performance of work that is part of the special employer's business. *Lambert v. James A. Teague Rental Equipment, Inc.,* 278 So.2d 544 (La.

App. 1st Cir.1973), citing *Humphreys v. Marquette Casualty Co.,* 103 So.2d 895 (La. 1958); *Benoit v. Hunt Tool Company,* 53 So.2d 137 (La.1951). The right of control includes the following factors: the right to select and discharge the employee, the right to supervise and direct his work, and the method by which it is done, and the manner in which the employee is paid. Implicit in the right to control is the necessity that the lending employer relinquish its control over its employee to the borrowing employer and that he is performing work for the borrowing employer's business. Additionally, the concept of the "borrowed employee" doctrine, connotes an agreement of some type between the lender and the borrower, that the lender relinquished such control of the employee to the borrower. *Dupre v. Sterling Plate Glass & Paint Co., Inc.,* 344 So.2d 1060 (La.App. 1st Cir.1977) and cases cited therein.

■ The stipulated facts set forth those factors which justify a conclusion that an employment relationship existed between the deceased and Gulf. Stutts was a direct employee of Davis & Sons, Inc. who was supplied to Gulf as a result of a contract between Davis & Sons, Inc. and Gulf. Under this contract, Davis & Sons, Inc. furnished personnel for manual labor to Gulf. Gulf furnished transportation to and from the compressor station where the men worked. Gulf, through its supervisory personnel, had direct control over Stutts' hours, duties and method of work: An authorized Gulf employee was required to approve Stutts' time sheet; there was no supervision on the job by any of Davis & Sons, Inc.'s personnel; the men supplied to Gulf were trained by Gulf's crews, assigned to various positions, and in Stutts' case, relieved by Gulf employees. Stutts was assigned to a compressor unit; a compressor station is critical to the production of oil— without it, oil cannot be produced.[2] It is clear that Gulf exercised control over Stutts in the performance of work that is part of Gulf's business. Thus, applying the tests heretofore set out, Stutts was a "borrowed" employee at the time of his death.

**2.** Guttry deposition at 12, 25, 27, 43, 44, 45.

■ If the deceased's status is that of a "borrowed" employee, Liberty Mutual is owed contribution for the payments it made on behalf of Davis & Sons, Inc. to the deceased's dependents. However, Gulf argues that the waiver of subrogation provision contained in the contract between it and Davis & Sons, Inc. precludes any assertion of a right to contribution by Liberty Mutual. Liberty Mutual contends that since there is no waiver of subrogation endorsement in the insurance policy issued to Davis & Sons, Inc., Liberty Mutual never waived its right of subrogation and may thus pursue its claim for contribution.

The policy issued by Liberty Mutual to Gulf provides that:

> In the event of any payment under this policy, the company shall be subrogated to all rights of recovery therefor of the insured . . . against any person or organization. . . .

While Liberty Mutual is clearly subrogated, it is subrogated only to those rights held by the insured. Basic contract law places a subrogee in the shoes of the subrogor; he cannot acquire by subrogation greater rights against the debtor than the subrogor possessed. *United States v. Winter,* 319 F.Supp. 520 (E.D.La.1970), citing 4 Corbin on Contracts, Section 791 (1951). Subrogation means substitution, not assignment or transfer. *Motors Ins. Corp. v. Employers' Liability Assurance Corp.,* 52 So.2d 311 (La. App. 1st Cir.1951). Under the law of Loui-

siana, whether the subrogation is legal or conventional, the subrogee is substituted to all the subrogor's legal rights and claims, both contractual and tortious, including such enforcement rights and remedies as possessed by the subrogor. *American Auto Ins. Co. v. Twenty Grand Towing Co.,* 225 So.2d 114 (La.App. 1st Cir.1969); *Southern Farm Bureau Cas. Ins. v. Sonnier,* 396 So.2d 996 (La.App. 3rd Cir.1981).[3]

Liberty Mutual, as subrogee, cannot, therefore, enforce rights that Davis & Sons, Inc., as subrogor, did not possess. As the contract between Davis & Sons, Inc. and Gulf provided that Davis & Sons, Inc. required that all policies providing insurance would contain a waiver of subrogation against Gulf, Liberty Mutual cannot claim contribution where Davis & Sons, Inc. could not. Accordingly, there should be judgment herein in favor of the defendant, dismissing plaintiff's claim at its cost. The Clerk of Court is directed to enter a judgment in accordance herewith.

■

---

**3.** Liberty Mutual argues that it is entitled to assert greater rights than its assured, citing *Stewart v. Cran-Vela Rental Co., Inc.,* 510 F.2d 982 (5th Cir.1975) wherein the plaintiff sued both the employer, Cran-Vela Rental Company (Cran-Vela) and Shell Oil Company (Shell). The claims of the plaintiff and State Auto, the intervenor, were settled by Shell. Shell then pursued Cran-Vela under a breach of contract theory for the failure of Cran-Vela to obtain a waiver of subrogation in favor of Shell in the policy issued by State Auto. Liberty Mutual relies on the Court's conclusion that "Cran-Vela's contracting away of its subrogation rights was not binding on State Auto. Thus, State Auto can assert a greater right against Shell as a subrogee of Cran-Vela than Cran-Vela itself would have had." *Id.,* at 985. This result is not apposite to the instant case. In *Stewart,* Shell paid the insurer and then sought to recover that payment from the party responsible for Shell's liability. Cran-Vela could not be permitted to gain from its breach of the contract with Shell. Here, where no payment has been made by Gulf to Liberty Mutual, there is no need for application of the equitable solution employed in *Stewart.* Payment by Gulf to Liberty Mutual would undoubtedly result in a suit by Gulf against Davis & Sons, Inc. for breach of contract. The law of Louisiana forecloses such a circuitous legal route by providing that the subrogee is substituted only to those legal rights held by the subrogor. Moreover, Louisiana courts, on a date subsequent to the *Stewart* decision, have reaffirmed the Louisiana law on subrogation set out herein. *Southern Farm Bureau Cas. Ins. v. Sonnier,* 396 So.2d 996 (La.App. 3rd Cir.1981). Accordingly, we do not feel bound by the dicta of *Stewart.*