278 So.2d 544 (1973)
James Robert LAMBERT
v.
JAMES A. TEAGUE RENTAL EQUIPMENT, INC., et al.
No. 9347.
Court of Appeal of Louisiana, First Circuit.
May 14, 1973.
Rehearing Denied June 20, 1973.
Writ Refused August 29, 1973.
*545 David M. Robinson, Watson, Blanche, Wilson & Posner, Baton Rouge, for third party defendant-appellant John Hennes Trucking Co.
Frank M. Coates, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, for James A. Teague Rental Equipment, Inc., and Highlands Ins. Co.
Cyrus J. Greco, Baton Rouge, for plaintiff-appellee Lambert.
Before LANDRY, TUCKER and PICKETT, JJ.
PICKETT, Judge.
The plaintiff, James Robert Lambert, instituted this suit against his former employer, James A. Teague Rental Equipment, Inc., (Teague), and its workmen's compensation insurer, Highlands Insurance Company (Highlands), endeavoring to recover workmen's compensation benefits, including medical expenses, for injuries which he asserts he sustained on April 9, 1971, in the course and scope of his employment by defendant, Teague. In their answer the defendants admitted the hazardous nature of their business, and their employment of plaintiff, but denied liability. The defendants assuming the position of third party plaintiffs filed a third party demand against John Hennes Trucking Co., Inc. (Hennes), for contribution of one-half of all benefits previously paid to plaintiff together with legal interest thereon from date of such payments, and that the third party defendant be adjudged jointly and solidarily liable to plaintiff to the same extent as third party plaintiffs. Hennes answered the third party demand with a general denial of liability.
The case was tried on the merits, and the trial court in written reasons for judgment filed July 19, 1972, found the plaintiff was totally and permanently disabled as a result of injuries sustained in the course of his employment, and as such entitled to benefits of $49.00 per week during his period of disability, not to exceed 500 weeks, less compensation already paid, and an award of $12,500.00 for medical and hospital services. On October 5, 1972, the plaintiff, Lambert, and the defendants, Teague and Highlands, having reached a lump sum compromise agreement, filed a joint petition in which they set forth that no final judgment had been filed, but that Teague had agreed to pay Lambert the total sum of $29,435.56, less the sum of $14,635.56 for compensation and medical benefits previously paid, and that Lambert had agreed to accept such payment in settlement of his claim. The Trial Court rendered and signed a judgment in conformity with the compromise agreement on the same date. On October 18, 1972, the Trial Court rendered and signed a judgment in favor of the third party plaintiffs, Teague and Highlands, and against the third party defendant, Hennes, for the sum of $14,717.78 being one-half of the amount of *546 the judgment in the main demand, together with legal interest from date of the judgment until paid, and that the third party defendant pay one-half of all the costs. From this judgment the appellant, Hennes, has appealed devolutively.
The Trial Court, in his written reason for judgment, summarized the facts as follows:
"On April 8, 1971, John Hennes Trucking Company, Inc., was working on a power plant at New Roads, and to facilitate this work, ordered a fifty-five (55) ton hydracrane from James A. Teague Rental Equipment, Inc. The crane was rented at an hourly rate of Fifty-five and no/100 ($55.00) Dollars for a minimum of eight (8) hours, and was operated by a crane operator, Henry Padgett, and an oiler, the plaintiff. The next morning the plaintiff drove the mobile unit to New Roads, and positioned the unit in accordance with instructions given him by an employee of John Hennes Trucking Company, Inc. He then proceeded, with Padgett operating the crane, to put out the outriggers necessary to stabilize the unit. While doing so he was struck by the counterbalance on the crane, resulting in serious injuries."
After a careful examination of the evidence in the record, we are convinced that the plaintiff was totally and permanently disabled, within the meaning and intendment of the Louisiana Workmen's Compensation Act, as a result of injuries sustained by him while performing services within the course and scope of his employment. We find it unnecessary to detail the evidence relating to the nature of plaintiff's employment, as well as the extent of his injuries. This is particularly true, because the appellant has not raised those issues, but complains that the Trial Court erred as follows:
"A. The trial judge erred in holding that an employer-employee relationship existed between plaintiff and third party defendant at the time of the accident sued on.
B. The trial judge erred in allowing the general employer contribution from the special employer, even if a special employment relationship existed, under the circumstances of this case."
Therefore, the principal issues are whether Hennes and Teague are solidarily liable to Lambert, and whether contribution is due to Teague because of the compensation payment made by it to Lambert.
The evidence shows that Teague was engaged in the business of renting cranes and other heavy equipment. The agreement between Hennes and Teague was that Teague would furnish the crane and an operator, and would provide a maintenance man called an oiler to maintain the equipment. Under their agreement Teague provided Hennes with a 55 ton mobile hydrocrane with an operator, Henry Padgett, and an oiler, plaintiff Lambert, as a unit at an hourly rate of $55.00. The crane was mounted on a truck. Teague obtained the necessary permit for the truck and crane to be moved on the highway. Lambert, who had the duty of operating the truck carrying the crane, drove the truck to the job site, and spotted the crane at a location pointed out to him by Norman Davenport, Hennes' Assistant Superintendent. It was necessary to immobilize the crane before it could be used. This required the extension of outriggers and the placement of pads under them for stability. Padgett and Lambert performed all of the operations necessary to immobilize the crane and insure its stability. While Padgett and Lambert were in the process of immobilizing the crane by setting the outriggers, Lambert was struck by a counterweight on the crane and injured.
If we should find that there existed a "special employer-borrowed servant" relationship between Lambert and Hennes, and that Lambert's injury occurred during this special employment, the law is clear to the *547 effect that Teague, as Lambert's general employer, and Hennes, as Lambert's special employer, are solidary obligors as contemplated by Civil Code Articles 2103 and 2104 for workmen's compensation due Lambert, and Teague and its insurer, Highland, having paid the whole debt, may claim from the Appellant, Hennes, contribution of one-half of that amount. Maryland Casualty Co. v. Liberty Mutual Ins. Co., 254 La. 489, 224 So.2d 465 (1969).
The problem we are here faced with is what test applies in determining whether a person is, at the time of his injury, a "borrowed servant" so as to be entitled to workmen's compensation from, in addition to his general employer, his alleged special employer. The issue perhaps better stated is, when does one become a special employer so as to become responsible to another's regular employee for workmen's compensation? A determination of whether a particular employer is a "special employer" or a particular employee is a "borrowed servant" is really one and the same. A finding of one necessitates a finding of the other; a special employer is one who has borrowed another's regular employee and made him his own borrowed servant.
Appellant suggests the following test: that where one in the employment of a general employer is claimed to have been in the actual or special employment of another at a particular time, it must be shown that the relation of master and servant between the employee and his general employer has been terminated or suspended, and that a new like relation between the employee and the other employer has been created and in existence at the time. According to Appellant, it is presumed that the original employment relationship continues until it is clearly shown that it has been terminated or suspended and a new employment relationship created between the employee and the borrowing or special employer. In order to overcome this presumption, something more than a mere showing of a division of control must be shown to have existed. Appellant contends the pivotal inquiry in these cases is who was in control of employee at the time of his injury. In conclusion, Appellant takes the position that control must be vested in either the general or special employer at that particular time and cannot be vested in both simultaneously. Appellant cites and relies upon the following cases: Benoit v. Hunt Tool Company, 219 La. 380, 53 So.2d 137 (1951); Kezerle v. Hardware Mutual Casualty Company, 198 So.2d 119 (La.App.3rd Cir. 1967); Universal Eng. & B. Inc. v. Lafayette Steel Erec. Corp., 235 So.2d 612 (La.App.3rd Cir. 1970); Barrois v. Service Drayage Company, 250 So.2d 135 (La.App.4th Cir. 1971); Richardson v. Tate, 269 So.2d 278 (La.App.4th Cir. 1972); B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369 (1955); Kiff v. Travelers, 5 Cir., 402 F.2d 129.
Each of the above cases cited by Appellant were brought in tort and dealt solely with the problem of when a general employer can escape tort liability for the negligent acts of his regular employee on the ground that said employee was, at the time he committed the acts of negligence, a borrowed servant of another. As previously noted, this is not the problem with which we are here concerned, and we for this reason find these cases inapposite.
Appellee also cites several cases as clearly governing the issue posed. One such case is B & G Crane Service v. Thomas W. Hooley & Sons, supra, which was also cited by Appellant. For the reason above given, we find B & G Crane Service, supra, inapposite. The other cases are Truitt v. B & G Crane Service, Inc., 165 So.2d 874 (La.App.4th Cir. 1964); Brown v. B & G Crane Service, Inc., 194 So.2d 746 (La. App.4th Cir. 1966); and Owens v. AAA Contracting Company, 219 So.2d 226 (La. App.1st Cir. 1969). These too are tort cases dealing solely with the same problem as was dealt with in the cases cited by Appellant, *548 and are for that reason likewise inapposite.
Our Supreme Court's decision in the case of Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895 (1958), is decisive of the issue here posed.
Humphreys, above, established the rule that in determining a general employer's liability for compensation, services arise out of an employment and are incidental thereto within the meaning of R.S. 23:1035 when the employment calls for the services being performed at the time of the accident. Humphreys also declared that whenever an employer directs an employee to render a particular service, such employer is in no position to assert that the services rendered by the employee at his request were disconnected from and not incidental to the employment.
In its discussion of the test to be applied in determining the special employer's liability for compensation, Humphreys, above, cites and quotes several different authorities.
First quoted is 35 Am.Jur., Master and Servant, Sec. 18, p. 455, to the effect that a regular servant or employee may be loaned by his general employer to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues to be under the direction and control of his general employer or becomes subject to the control of the person to whom he has been loaned. Where the employee consents to the lending, he becomes the employee of the borrower. If the borrower has the right to control, it is immaterial whether he actually exercises same or merely directs the employee to do what is necessary, trusting to the employee's expert skill for the proper result. In either case, the employee becomes the special employee of the borrower or special employer. For the relationship to commence, it must appear that the employee has consented to the relationship, accepted the control of the special employer and commenced to undertake the business of the borrower or special employer. Such consent or acquiescence may be express or implied.
Next Humphreys contains the following quote from Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480:
"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." (Emphasis by the Court.)
*549 Lastly, the Supreme Court in Humphreys cites its own opinion of Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951), which dealt with the liability of general and special employers for the torts of the employee, and which noted that in such cases liability in tort depends in some jurisdictions upon the control of the employee, whereas, others base liability on the issue of whose business was being conducted at the time the tort occurred. The quoted language from Benoit also notes that in reality, these two tests are actually one and the same, and determining who controls the servant is merely a means of determining in whose business the servant is engaged.
The test thus established in Humphreys for determining the special employer's liability for compensation is the control exercised over the special employee in the performance of work that is part of the special employer's business.
Applying the above test to the facts of the present case, we find that Lambert was a "borrowed servant" at the time of his injury. As was the case in Humphreys, Hennes, through its supervisory personnel, had direct control over Lambert (over his hours, duties and method of work), and could have discharged him at any time had he not worked in an obedient and satisfactory manner by merely ordering him to leave the particular job site. Norman Davenport, Henne's Assistant Superintendent, testified that it was he who ordered cranes from Teague when needed. He explained that the employees sent by Teague to operate the cranes do pretty much what they are directed to do, their only discretion being in the area of safety for the equipment. Mr. Davenport further testified it was necessary to first set up or spot a crane of the type here involved before lifting with it, and that with respect to this particular crane, upon its arrival at the job site, he told Mr. Padgett, the operator, what he wanted him to do and where to set up or spot the crane in order to perform the needed work. It was while acting pursuant to these instructions that Lambert was injured in the manner noted earlier in this opinion. Mr. Sinimo Runnels, Teague's Office Manager, testified that Teague's employees had standing instructions to go out and do what the customer asked, and if a customer was dissatisfied for any reason, they merely discharged the crane along with its crew and sent it back.
Accordingly, we conclude, as did the trial Court, that an employer-employee relationship existed between Mr. Lambert and Hennes at the time of the accident and therefore, in accordance with Maryland Casualty Co. v. Liberty Mutual Ins. Co., supra, Hennes, along with Teague, became solidarily obligated for workmen's compensation due Lambert, and Teague and its insurer, Highland, having paid the whole debt, are entitled to contribution of one-half of that amount from Hennes.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to third party defendant-appellant.
Affirmed.