COVINGTON, Judge:
Harold D. Sherwood, a truck driver employed by Tom Hicks Transfer Company (hereinafter referred to as Hicks), was killed on May 13, 1971, while making a delivery of pipe to a job site of Boh Brothers Construction Company, (hereinafter referred to as Boh). Gulf Insurance Company, subrogated workmen’s compensation insurer of Hicks, brought suit against Boh to recover workmen’s compensation benefits being paid by Gulf to the widow of Harold D. Sherwood.
Boh is a Louisiana corporation, authorized to do and doing business in the State of Louisiana, and Hicks is a common carrier operating pursuant to authority granted by the Interstate Commerce Commission and the Louisiana Public Service Commission.
We adopt a portion of the trial court’s Reasons for Judgment, viz:
“The thrust of plaintiff’s argument is that Sherwood’s sole responsibility was to pick up a load of pipe from Romar in Houston, Texas and to deliver the load to defendant’s job site where defendant’s employees unloaded the pipe and when the decedent began to unload the pipe he became the borrowed servant of Boh and therefore Boh became responsible for any injuries and/or damages sustained by the decedent. Therefore, Boh must reimburse plaintiff for all amounts paid decedent’s widow under its Workmen’s Compensation Insurance as Tom Hick’s Insuror.
“Plaintiff alleges that all trucking companies hauling merchandise over irregular routes operate as Intrastate Common Carriers under the control of the Louisiana Public Service Commission. That the Commission set certain specific rates carriers can charge for certain services. The rate known as the tariff, is based on per pound loads per mile with or without handling of the load. If the load was loaded or unloaded in addition to mere hauling a different tariff governed. Further, plaintiff contends that Boh was very familiar with tariffs because the very nature of its business required frequent use of common carriers and therefore were charged with knowledge that the load carried by the decedent required all unloading operations to be conducted by Boh and not by Hicks or its employees.
“Testimony is undisputed that shortly before the unfortunate incident causing sherwood’s (sic) death, Boh was doing some construction work in Terrebonne Parish along Bayou Pointe au Chien. Some heavy steel piling were required. Boh’s job superintendent sought prices from various companies who sold this material and Romar of Houston, Texas quoted him a price delivered to the Pointe au Chien site. Sherwood, an experienced truck driver, was dispatched to Romar to pick up the pipe. His truck was loaded for him and he drove to the Pointe ou Chien site.
“Upon arrival at the job site, Sherwood was told to wait, because the Boh employees were on a lunch break. The tes *899 timony is to the effect that before the pipe could be unloaded, a pipe rack had to be made that merely consisted of laying timber perpendicular to the bed of the truck and the pipe was rolled off of the truck onto the timbers. The timbers prevented the pipe from resting on the ground and permitted Boh’s crew to roll the pipe so as to resurface the pipe wherever it may have been damaged during shipment.
“After the Boh crew returned from lunch break, the job foreman pointed out the site for unloading to Sherwood and imT mediately thereafter Boh’s crew constructed the pipe rack. Sherwood instructed Boh’s men to place some blocks near the left wheels of his trailer he then drove the trucks so that the left wheels rested upon the blocks causing the trailer to tilt towards the right. He then loosened the chains binding the load.
“The pipe on the truck is stacked pyramid fashion with the bottom pipes held in place by two chocks; one in front and the other in the rear of the truck. Sherwood knocked the front chocks out and then went to the rear. When he knocked the rear chock out, the pipe tumbled upon him crushing him to death.
“Boh insists that it had no obligation to unload the truck. They had no knowledge of the tariff or rate charged by Hicks and their dealings were solely with Romar. Romar selected the trucking company and paid for the hauling of the pipe purchased by Boh.
“Furthermore, Boh insists that its employees were specifically ordered not to unload any trucks because this was a dangerous operation and the supervisor was only to point out to the driver the unloading spot.
“In Gaspard v. Travelers Insurance Co., 284 So.2d 104 (3rd Circuit, 1973) the Court held:
‘There is no general test that can be applied to the determination of the employee-employer relationship. This is recognized in the Richard and Hixson cases supra. In those cases, the consideration are best stated:’
“The essence of the relationship is the right to control. The four primary factors considered in deciding the above are —
1. Selection and engagement.
2. Payment of wages.
3. Power of dismissal.
4. Power of Control.
“In this case, plaintiff does contend that Boh selected Sherwood to perform serv ices after he reached the job site, however, Boh denies Sherwood did more than he was required to do and he was merely pointed the site to discharge his load. In this connection the Court in Lambert v. James A. Teague Rental Equipment, Inc., 278 So.2d 544 (1st Circuit) stated:
‘If the borrower has the right to control, it is immaterial whether he actually exercises same or merely directs the employee to do what is necessary, trusting to the employees’s expert skill for the proper result.’
“Secondly, the evidence clearly indicates at all times Sherwood’s wages were paid by Tom Hicks and Boh at no time paid him for any services rendered. Boh, on the contrary, denies Sherwood rendered any services, except those incidental to his employment with Hicks and these duties required unloading the truck and the merchandise aboard the truck did not belong to Boh until unloaded at the site pointed out to the driver.
“The third and fourth guides are indicative of the degree of the control exercised by the recipient of the services. *900 Plaintiff does not show that Boh had the power to dismiss Sherwood: however, plaintiffs do indicate that if a truck driver does not perform as suggested by the recipient of the goods, he can be made to just sit and wait for a period of time. Of course, waiting for a truck driver represents loss of revenue because his income is derived from the number of trips he is able to work. Lost time due to waiting could therefore have effectively control the activities, of the truck driver and make him cooperative to the extent that he will do whatever the recipient of the load directs. This Court is not impressed with this argument. There is no showing that Boh held Sherwood’s truck beyond the lunch hour in order to influence Sherwood to unload his vehicle. Furthermore, this Court is convinced that the evidence carefully points out that customarily Boh’s operations on job sites were to require truck drivers to unload their own trucks and were only interested in the end result, the unloading of the pipe upon the boards laid down by Boh’s employees. This was a job that truck drivers were experienced in doing and the weight load was of no consequence.
“The Fourth Circuit stated this rule in Finch v. Jordano, 284 So.2d 641, wherein Judge Schott stated:
‘Thus if the employer possesses the right to direct the manner in which the work is performed by the employee, there is clearly a master-servant relationship established. However, if the employer or contractor is only interested in the end result and retains no right to supervise the manner in which the contract or work is performed, then the party rendering the service is characterized as an independent contractor.’
“Plaintiff cites Pfleiger v. Haws, 180 So.2d 892 as authority for his position. This case is clearly distinguishable from the case before this Court. In Pfleiger, an employee of Duplantis Truck Line, Inc. was ordered to deliver a piece of oil field equipment to the Humble Oil Company dock at Pointe au Chien in Terre-bonne Parish. Upon arrival at the dock Pflieger sojourned at a nearby store where he met defendant, Albert P. Haws, who was likewise awaiting the arrival of the barge to deliver a load of drill collars. Neither driver had a helper. Accordingly, it was mutually agreed each would assist the other in unloading their respective trucks. A ramp was provided at the dock landing for loading and unloading.
“The accident occurred when the drill collars on Haws’ truck were being unloaded. The load fell. In consequence, the injuries sued for resulted to plaintiff’s left foot. The Court found that Pflieger must be categorized as an employee pro hoc vice of John’s Trucking Service Inc. At the time plaintiff was injured he was engaged in an act of unloading a truck belonging to John’s Trucking Service, Inc. and was in no way performing any duty connected with his employer.
“This Court concludes that the decedent was performing a duty connected with his employment with Tom Hicks, that he was not directed, nor supervised in this work and Boh exercised no power to hire or fire him, but in fact, merely designated a specific area to spot his truck so that he could perform the unloading operations in his discretion and in the manner he was accustomed.”
Gulf Insurance Company, commenced paying and continues to pay weekly benefits to Mr. Sherwood’s widow. It also paid statutory funeral expenses. Gulf filed this suit against Boh to recover the amount paid and to be paid to Mrs. Sherwood up to a total of $25,500.00, alleging that Sherwood was a borrowed employee of Boh at the time of his death. In the alternative, Gulf prayed for 50% contribution of the amount paid and 50% of all future payments up to said total sum.
*901 Gulf Insurance Company, appellant, complains that the trial court erred as follows:
“A. The trial judge erred in holding that Hicks was obligated to unload the shipment of piling.
B. The trial judge erred in holding that Mr. Sherwood was not a borrowed employee of Boh Brothers Construction Company, Inc. at the time of the accident sued upon.”
The principal issues to be decided are whether Boh exercised such control over Sherwood as to make him a “borrowed servant”, thus becoming solidarily liable with Hicks, and whether Hicks was obligated to unload the shipment of piling.
Appellant cites several cases to substantiate the fact that Sherwood was a “borrowed servant”. Among these cases are Lambert v. James A. Teague Rental Equipment, Inc., supra, and Gaspard v. Travelers Insurance Company, supra. The language quoted from those cases in the trial court’s Reasons for Judgment is contrary to appellant’s position.
We are unable to agree with the appellant. In the first place, plaintiff below has not borne the burden of proving that Sherwood was engaged in unloading the truck at the time of his death. Testimony was replete to the effect that it was the truck-driver’s duty to remove the binder and chains. It is difficult to make a legal distinction between such action, on the one hand, and the removal of the chocks, on the other, as being the business or duty of the consignee. To do so would equate removal of the chocks with unloading. Instead, it seems more logical, even if the consignee were to ultimately unload, for said consignee to have the driver remove the binder, the chains and the chocks before the unloading, whether it was to be accomplished by lifting the individual pipes or by rolling them off the truck. The fact that the driver tilted the truck slightly in order to make the rolling easier would be an act of accommodation at most.
Even if the removal of the chocks be made the equivalent of the act of unloading, the appellant fares no better. There was no evidence adduced at the trial which showed any more control of Sherwood by Boh than the trial judge observed in his Written Reasons for Judgment. In Gas-pard, the employer was in direct control of the employee, and the work was in direct furtherance of the employer’s business. The situation in Lambert was factually different than the case under consideration because in Lambert the employee of James A. Teague Rental Equipment, Inc., was under the direct supervision of Hennes.
The trial court found that Boh did not select Sherwood, that Boh at no time paid him for any services rendered and Boh lacked the power to dismiss Sherwood. We agree with the findings of the trial court that Sherwood was not a “borrowed servant” of Boh.
The question of Boh’s obligation under the terms of the tariff, to unload the pilings was also decided upon the “theory of control”. In 13 Am.Jur.2nd, Carriers, Section 319, pp. 814 and 815, it reads as follows :
Section 319. Loading and Unloading.
“As a general rule, the carrier has the primary duty to load and unload goods or inanimate freight shipped in less than carload lots, and is liable for damages resulting from its failure to perform that duty in a proper manner. However, the shipper or consignee has the duty to load and unload freight shipped in carload lots, or where for the shipper’s convenience the cars to be loaded or unloaded are placed at his warehouse or on public tracts.
“Whether the general servants of the carrier become the special servants of the shipper or consignee, or vice versa, in the loading or unloading of property, as affecting the question of liability for *902 loss or injury due to their negligence, is usually determined either by the application of the general rule of master and servant that responsibility rests upon the party having the right to control the actions of the servant, or by putting the responsibility for the servant’s acts on the party who has the duty to load and unload the shipment. Similarly, the preceding ■ rules have been applied to the question whether a carrier is liable for damage to goods during loading and unloading, in cases where the consignor or consignee or their employees have assisted in such loading or unloading.” (emphasis added and footnotes omitted)
The general rule of master-servant, or that responsibility rests upon the party having the right to control, has been decided adversely to appellant. The trial court heard arguments from both sides relating to whose responsibility it was to unload the truck. Boh contended that it never contracted with Romar to unload the truck and that they never understood that they were to unload. Hicks, however, argues that the duty to unload was placed on Boh and that Boh knew as a matter of fact that it was obligated to unload. After hearing the evidence the trial court held that: “This court concludes that the decedent was performing a duty connected with his employment with Tom Hicks . . . .”
Boh never consented to unload the pilings and a tariff is an inappropriate instrument to legislate liability with respect to a non-consenting party; Middle Atlantic Conference v. U. S., D.C.1972, 353 F.Supp. 1109. Finding that Hicks was responsible for the unloading of the piling, and that Harold D. Sherwood was acting in the furtherance of his employer’s business, we affirm the judgment of the trial court. All costs are assessed against the appellant.
AFFIRMED.