507 So.2d 872 (1987)
Robert L. BRUMBAUGH, Sr.
v.
MARATHON OIL COMPANY, Intercon Engineers, Inc., ABC Insurance Company, XYZ Insurance Company, and Bud Hartsfield.
No. 87-CA-29.
Court of Appeal of Louisiana, Fifth Circuit.
May 1, 1987.
Writ Denied July 1, 1987.
*873 C. Joseph Murray, Murray & Foutz, New Orleans, for plaintiff-appellant.
William P. Golden, Jr., Accardo, Edrington, LeBlanc & Golden, Laplace, for defendant-appellee.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal relates to a suit in tort filed by an employee against several defendants for injuries sustained in a work-related accident. We affirm.

*874 PROCEDURAL HISTORY
Robert L. Brumbaugh, Sr. filed suit in the Fortieth Judicial District Court seeking delictual damages from several named defendants and their insurers, including Wheeler A. "Bud" Hartsfield and Intercon Engineers. Marathon Oil was subsequently dismissed by summary judgment because, as the plaintiff's statutory employer under La.R.S. 23:1032, it was paying benefits and was immune from tort liability. Fidelity & Guaranty Insurance Underwriters intervened, seeking to recover compensation benefits paid the plaintiff, if the tort suit was successful. Other defendants were dismissed and the case against Hartsfield and Intercon proceeded to trial by jury on April 21-24, 1986. Thereafter, the jury rendered its verdict, which was adopted by the trial court by judgment of April 30, 1986 and proclaimed the plaintiff to be a "borrowed servant" with worker's compensation benefits as his exclusive remedy. The plaintiff appeals.

ISSUES
We are called upon to determine two issues:
(1) Whether the trial court erred in allowing testimony as to the "borrowed servant" doctrine, despite the alleged failure of the defendants to claim the doctrine as an affirmative defense prior to trial; and
(2) Whether the jury erred in finding the plaintiff to be a "borrowed servant," thereby limiting his remedy exclusively to worker's compensation benefits.

FACTS
Robert L. Brumbaugh, Sr., plaintiff, was employed by National Maintenance Corporation as a boilermaker/pipefitter/craftsman at the Marathon Oil Company Refinery in Garyville, Louisiana. On March 27, 1981, he and coworker Curtis Cambre reported to work and were assigned to the "alky unit" where he was to work with Mr. Wheeler A. "Bud" Hartsfield, an engineer employed by Intercon Engineers, Inc. Brumbaugh and Cambre were to adjust spring hangers, which supported the massive piping structure at the plant. The plaintiff had been assigned to this task for several days prior to the accident. Hartsfield had done much of the redesign of the structure and was present at the job site to insure the proper tension was placed on the spring hangers. In order to adjust one of the hangers that day, the men climbed off the scaffolding and onto the pipe, approximately 12-15 feet above the ground. Cambre held a wrench while the plaintiff held onto a "cheater pipe" placed on the wrench in order to gain leverage for the adjustment to the nut. The wrench slipped off the nut and the plaintiff, holding onto the cheater pipe, fell to the ground, fracturing many of the bones in both feet. At no time during the work were available safety belts used, nor were the scaffolding and guardrails sufficient to be of use in this particular adjustment.

ISSUE ONE ANALYSIS
La.C.C.P. art. 1005 states that affirmative defenses shall be set forth in the answer or any other pleading. It enumerates various affirmative defenses, including "injury by a fellow servant," which must be specially pleaded in the answer, and is illustrative, not exclusive. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir.1979). Our jurisprudence states that an affirmative defense raises new matters, which assuming the allegations of the petition to be true, constitute defenses to the action and have the effect of defeating the plaintiff's demand on its merits. Rourke v. Cloud, 398 So.2d 57 (La.App. 3d Cir.1981); Modicut v. Bremer, 398 So.2d 570 (La.App. 1st Cir. 1980). Additionally, our jurisprudence indicates that a plea of "statutory employer," whether the basis of a suit for compensation benefits or a defense asserted to a tort claim, is an affirmative plea. Walker v. Over The Road Trucking, Inc., 469 So.2d 9 (La.App. 4th Cir.1985); Freeman v. Chevron Oil Co., 517 F.2d 201 (5th Cir.1975). Importantly, we note that as a defense to a claim sounding in tort, the "borrowed servant" doctrine calls into question many issues which often will be absent from the plaintiff's petition. Therefore, in order to serve what we determine to be the policy behind La. C.C.P. art. 1005, namely, giving the plaintiff fair notice of the defense and preventing surprise, we *875 find a tort immunity under the "borrowed servant" doctrine is an affirmative defense within the context of a tort action. See Trahan v. Ritterman, supra.
A careful review of the record reveals a "Motion for Summary Judgment," filed in 1984, in which the defendants claimed the plaintiff "would be a borrowed servant to Bud Hartsfield or in the alternative, a fellow employee." While subsequent memoranda accompanying this motion creates some confusion as to exactly which ground is being relied upon, it is clear the plaintiff is on notice and aware that immunity under Title 23 is put at issue. Whether as the "statutory" employer or the "borrowing" employer, the defendants made it clear that the relationships between the parties would be a factor at trial in an attempt to claim immunity from the suit in tort. Furthermore, plaintiff's counsel began eliciting testimony regarding the right of control and supervision exercised by Hartsfield and Intercon when his first witness, the plaintiff himself, testified. Introduction of this testimony effectively expanded the pleadings and put at issue the exact nature of the relationship between the plaintiff and the defendants. Certainly all parties were aware prior to trial that although this petition was founded on the basis of La. C.C. art. 2315 delictual responsibility, the plaintiff's "employee" or "third person" status would be pivotal to the success or failure of his action in tort. Accordingly, we see no abuse of the trial judge's discretion in allowing introduction of evidence and testimony under the "borrowed servant" doctrine.

ISSUE TWO ANALYSIS
We now consider whether the plaintiff was a "borrowed servant" of Intercon Engineers and a coemployee of Wheeler "Bud" Hartsfield. Importantly, Louisiana jurisprudence and federal cases interpreting Louisiana law have on numerous occasions set forth several factors to consider when determining borrowed servant status: (1) first and foremost, right of control; (2) selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by the general employer; (6) which employer's work was being performed at the time in question; (7) agreement, either implicit or explicit, between the borrowing and lending employers; (8) furnishing of necessary instruments and the place for performance of the work in question; (9) length of time in employment; and (10) acquiescence by the employee in the new work situation. Dupre v. Sterling Plate Glass & Paint Co., Inc., 344 So.2d 1060 (La.App. 1st Cir. 1977), writ denied, 347 So.2d 246 (La.1977); Gaspard v. Travelers Ins. Co., 284 So.2d 104 (La.App. 3d Cir. 1973); Stafford v. Gilmer, 98 So.2d 522 (La.App. 2d Cir.1957); Menard v. Brown & Cassidy Warehouse, 72 So.2d 891 (La.App. 1st Cir.1954); West v. Kerr-McGee Corp., 765 F.2d 526 (5th Cir.1985); Hall v. Diamond M Co., 732 F.2d 1246 (5th Cir.1984); Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969); Liberty Mut. Ins. Co. v. Gulf Oil Corp., 559 F.Supp. 777 (E.D.La.1983), procedural history omitted; Hooper v. Exxon Corp., 571 F.Supp. 477 (M.D.La.1983). This jurisprudence, however, fully recognizes that neither control nor any other single factor is decisive, and no fixed test is used to determine the existence of a borrowed servant relationship.
However, the borrowed servant doctrine, when used as a defense by the defendant"employer" and "coemployee" to a tort action, must be distinguished from the borrowed servant doctrine as in the context of respondeat superior, i.e., to hold a borrowing employer liable to third party plaintiffs in tort for acts committed by his employee during the course and scope of employment. See Lambert v. James A. Teague Rental Equip., Inc., 278 So.2d 544 (La. App. 1st Cir. 1973), writ not considered, 281 So.2d 750 (La.1973) and Gaudet v. Exxon Corp., 562 F.2d 351 (5th Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978). The Lambert court found, in determining the special employer's liability for worker's compensation, that "the control exercised over the special employee in the performance of work that is part of the special employer's business" *876 was a significant factor. Lambert v. James A. Teague Rental Equip., Inc., supra at 549. In Gaudet, also considering the doctrine in the context of the special employer's liability for compensation, the court found two factors of significant value: "(1) was the second employer itself responsible for the working conditions experienced by the employee, and the risks inherent therein and, (2) was the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto?" Gaudet v. Exxon Corp., supra at 357.
Additionally, our jurisprudence states that whether a person is a borrowed servant is an issue of fact, and as such, is a proper question for the jury. Casnave v. Dixie Bldg. Material Co., Inc., 490 So.2d 381 (La.App. 4th Cir.1986); Marzula v. White, 431 So.2d 858 (La.App. 2d Cir.1983); Frye v. Texas Brine Corp., 425 So.2d 310 (La.App. 3d Cir.1982); Vincent v. Ryder Enter., Inc., 352 So.2d 1061 (La.App. 3d Cir.1977); Jones v. Francis Romero, Inc., 345 So.2d 1286 (La.App. 3d Cir.1977). Moreover, there is a presumption that the general employer retains control of his employee, and the party who alleges that an employee has become a borrowed servant bears the burden of proving by a preponderance of the evidence on that issue. Marzula v. White, supra; Etienne v. Home Indem. Co., 307 So.2d 654 (La.App. 3d Cir.1975). In order for the employee of the general employer to become the borrowed employee of a special employer it must be shown that the employer-employee relationship between the general employer and his employee has been suspended and a new and like relationship has been created between the general employer's employee and the special employer. Marzula v. White, supra.
We now analyze the pertinent record facts, noting that National Maintenance Corporation, the plaintiff's immediate employer, was in the business of providing craftsmen's services to those with whom it contractedin this case, Marathon Oil. The plaintiff testified that on the morning of March 27, 1981, Richard Morse, his supervisor, told him "to go and work for Bud Hartsfield for Intercom [sic]" and that "we would be under his [Hartsfield's] supervision for that day." Morse and Mr. Curtis Cambre, the plaintiff's coworker, confirmed this testimony. Morse stated:
What I believe is, when I send them with Intercom [sic], they were out of my hands until they come back to me, but I didn't have no authority over them while they were workersworking for Intercom [sic]. If I catch them sitting down while they were working for Intercom [sic], I couldn't tell them to get up.
This is weighed against the testimonies of Mr. Charles Greiner (engineering manager for Marathon), Mr. Ted Owens (maintenance planner for Marathon), and Hartsfield himself, all of whom characterized Hartsfield's job as to "monitor," "watch," "stand and watch," "witness," or "observe" Brumbaugh and Cambre adjust the spring hangers. Interestingly, Greiner testified that he spoke directly to Hartsfield and told him to "in no way ... instruct at all any of the National Maintenance people or even our own coordinators, our Marathon coordinators." Hartsfield claimed his supervisor, Walt Merrill of Intercon, told him to go to the job site. All parties present that morning, however, agree that when the plaintiff and Mr. Cambre arrived at the job site, they did not have in their possession the plans and drawings required to make the necessary adjustments to the spring hangers. These plans were in the hands of Hartsfield, who stated he would tell the craftsmen if adjustments were not right. The plaintiff confirmed that Hartsfield instructed as to the pounds desired on each hanger, and he and Cambre both stated that Hartsfield directed them in working these adjustments. Cambre even stated, "We were just going by what he told us to do." Richard Morse, the plaintiff's foreman, stated clearly and unequivocably that it was common practice to send employees to other units, and he called this a "loaning" of the employees to Intercon.
*877 It is undisputed that Intercon did not select these two workers from the National Maintenance staff, did not enlist them on the Intercon payroll, or provide the tools used at the job site. On the other hand, there was some apparent agreement between the two employers that these two employees would not be working for or under the control of National Maintenance that day and that an Intercon engineer would be on the job site to supervise their work. Also, the employees clearly acquiesced in the new work situation. Both Brumbaugh and Cambre testified that they had been sent to the job site to do this type of work daily for approximately two weeks. As to the conditions at the work site, National Maintenance employees constructed the scaffolding around the pipes, aided by the Intercon diagrams of which spring hangers needed adjustment or relocation. Hartsfield testified that a National Maintenance foreman asked him where to put scaffolding, strongly indicating Intercon's control over the job and the job site.
Considering all of the testimony in light of our jurisprudence, we cannot say the jury erred in its finding that the plaintiff was a "borrowed servant" of Intercon. Because this finding of fact is not manifestly erroneous, we affirm the judgment of the trial court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, Co., 283 So.2d 716 (La.1973).
Other issues have been raised which will not be addressed simply because they become irrelevant in light of our conclusion the jury did not err in finding that the plaintiff was a borrowed servant.
For the reasons assigned, the judgment of the trial court dated April 30, 1986 is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.