593 So.2d 942 (1992)
Adolph CARTER
v.
CHEVRON CHEMICAL COMPANY, Joseph M. Mackenzie, and Al Despot.
Nos. 91-CA-1013, 91-CA-1582.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1992.
Writ Denied April 10, 1992.
*943 Clement P. Donelon and Donelon & Majoria, Metairie, for plaintiff-appellant, Adolph Carter.
Milling, Benson, Woodward, Hillyer, Pierson & Miller, Bruce R. Hoefer, Jr. and Len R. Brignac, New Orleans, for defendant-appellee, Joseph M. MacKenzie.
Before KLEES, BYRNES and JONES, JJ.
KLEES, Judge.
This is an appeal by plaintiff, Adolph Carter, from the granting of summary judgment dismissing his tort claim against defendants, Chevron Chemical Company (Chevron) and Joseph M. MacKenzie. After reviewing the record and applicable law, we reverse and remand for a trial on the merits.
Plaintiff was employed by J.E. Merit Constructors, Inc. (J.E. Merit) to operate a machine called a "clinker hopper" as well as to perform other general maintenance services at Chevron's Oak Point Plant. Chevron had contracted with J.E. Merit to provide general maintenance services and laborers at Chevron's Oak Point Plant in Belle Chase, Louisiana. On March 5, 1989, plaintiff was injured when his foot slipped into a screw conveyor while he was unloading ash from the clinker hopper. On December 6, 1989, plaintiff filed suit in tort against Chevron, MacKenzie, and Al Despot for injuries sustained as a result of this accident.
Chevron and MacKenzie, Chevron's plant manager, filed separate motions for summary judgment to dismiss plaintiff's claims on the grounds that plaintiff was Chevron's statutory employee and/or borrowed servant and, therefore, limited to the exclusive remedy provisions of the Louisiana Worker's Compensation Statute. On February 15, 1991, the trial judge granted Chevron's motion for summary judgment dismissing plaintiff's claims against Chevron. On April 19, 1991, the trial court granted MacKenzie's motion for summary judgment dismissing plaintiff's claim against him. On May 7, 1991, the court ordered consolidation of the appeals of these judgments.
On appeal, plaintiff argues that the trial court erred in granting summary judgment in the following ways:
(1) the trial court erred in finding that plaintiff was a statutory employee of Chevron;
(2) the trial court erred in finding that plaintiff was a borrowed servant of Chevron;
(3) the trial court erred in dismissing plaintiff's cause of action under La.C.C. art. 2315.3.
A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The burden of showing that there is no genuine issue of material fact and mover is entitled to judgment as a matter of law is incumbent upon the mover, and all doubt must be resolved against the mover and in favor of trial on the merits. Chaisson v. Domingue, 372 So.2d 1225 (La.1979), Oller v. Sharp Elec., Inc., 451 So.2d 1235 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194 (La.1984).
The trial judge did not state reasons for granting the summary judgments dismissing defendants. His decision could have been based on three possible findings:
(1) The trial judge could have determined that plaintiff was the statutory employee of defendants based on the retroactive application of the 1989 Amendment to LSA-R.S. 23:1061;
(2) The trial judge could have determined that plaintiff was the statutory employee based on the Berry analysis; or
*944 (3) The trial judge could have determined that plaintiff was Chevron's borrowed servant.
The first issue on appeal is whether the trial court erred in granting summary judgment in favor of defendants on the ground that a statutory employment relationship existed between plaintiff and Chevron. The Louisiana Worker's Compensation Act provides the exclusive remedy for employees who sustain injuries arising out of and in the course and scope of their employment. La.R.S. 23:1021 et seq. The statute further extends tort immunity beyond the employee's immediate employer to one who satisfies the statutory employment relationship. La.R.S. 23:1061.[1] Under certain circumstances, employees of contractors are considered to be the employees of the owner or principal.
Prior to the 1989 amendment to La.R.S. 23:1061, the supreme court in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986) developed a three step test for determining whether statutory employment existed between an employee of a contractor and the principal:
(1) Is the contract work specialized? If so then as a matter of law the contract work is not part of the principal's trade, business, or occupation and the principal is not the statutory employer of the contractor's employee.
(2) If the contract work is nonspecialized, compare the contract work to the principal's trade, business, or occupation to determine if the contract work can be considered part of the principal's trade, business, or occupation.
(3) If the contract work is part of the principal's trade, business, or occupation, was the principal engaged in the contract work at the time of the injury.
The 1989 Amendment to R.S. 23:1061, effective January 1, 1990, broadened the reach of the statutory employment language, *945 returning the courts to a more liberal standard of tort immunity.[2] The amendment legislatively overruled Berry. The effective date of the statute was January 1, 1990. Plaintiff was injured and filed suit prior to the effective date of the amendment; therefore, we must determine whether the amendment is to be given retroactive effect.
Article 6 of the Louisiana Civil Code provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Defendants argue that the statute was amended to clarify an existing statute and, therefore, should be given retroactive application. In Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974), the Louisiana Supreme Court stated:
Interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties.
Defendants cite several federal district court cases which gave retroactive effect to the amendment to section 1061 reasoning that the amendment is merely interpretive of prior law and does not disturb vested rights. Brock v. Chevron Chemical Company, 750 F.Supp. 779 (E.D.La.1990), vacated by 946 F.2d 1544 (5th Cir.1991), Sawyer v. Texaco Refining and Marketing, No. 89-2734, 1991 WL 28986 (E.D.La. February 25, 1991), Gambino v. Chevron U.S.A. Inc., 1991 WL 6231 (E.D.La. Mar. 26, 1991), vacated by 947 F.2d 1487 (5th Cir.1991).). However, on October 18, 1991, the Fifth Circuit vacated and remanded Brock and Gambino for further proceedings. Furthermore, the Fifth Circuit most recently addressed this issue in Pierce v. Hobart Corporation, 939 F.2d 1305 (5th Cir.1991), reversing the findings in the district court cases cited by defendants and holding that under Louisiana law the amendment to section 1061 is not to be given retroactive effect. In Pierce, the Fifth Circuit stated:
Substantive laws either establish new rules, rights, and duties or change existing ones. (citations omitted) Interpretive laws, on the other hand, do "not create new rules, but merely establish[] the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. (Citations omitted.) ... Interpretive laws provide the Legislature with the opportunity to pronounce the "correct" interpretation to be given existing laws.
The 1989 amendment to 1061 significantly changes the definition of the statutory employment relationship. It reverses years of limited judicial applications of the statutory employer defense *946 and returns Louisiana to the more expansive integral relation test. As a result, the right of an employee of a subcontractor to sue a principal in tort for a work-related injury is dramatically curtailed by the statutory employer defense.
Plaintiff argues that the 1989 amendment is a substantive change and, therefore, should not be applied retroactively. To support this argument, plaintiff cites several appellate court cases which did not apply the 1989 amendment retroactively. Fountain v. Central Louisiana Electric Company, Inc., 578 So.2d 236 (La.App. 3d Cir.1991) writ denied 581 So.2d 707 (La. 1991); Tujaque v. Louisiana Department of Corrections, 559 So.2d 1 (La.App. 1st Cir.1990); Dye v. Ipik Door Company, Inc., 570 So.2d 477 (La.App. 5th Cir.1990). We agree. The 1989 amendment is more than merely interpretive of the original Act. The amendment represents a change in the rights and obligations of the parties and is therefore substantive law. Consequently, this law should be given prospective application only.
The next issue is to determine defendants' liability in tort under Louisiana law as it existed prior to the amendment to section 1061. Applying the Berry analysis, the first step is to determine whether the contract work is specialized or nonspecialized. This is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, education and/or equipment not normally possessed by those outside the contract field. Berry, supra at 938. The entire scope of the contract work must be considered as opposed to the specific task of the individual employee. Berry, supra at 937.
Chevron's trade, business, or occupation is to produce, test, store, market, and transport fuel additives at its Oak Point Plant. One incinerator is in operation at this plant to burn and reduce by-products of the operation to ash. The ash is collected in a clinker hopper which is emptied daily into a truck called a load lugger and transported to an area for disposal. Chevron contracted with J.E. Merit to provide laborers, apprentices, and bottlewashers to perform general maintenance services.
To demonstrate that the contract work was specialized, plaintiff argues that under the contract, J.E. Merit supplied welding equipment which proves that welding was part of the contract work. Plaintiff cites Miller v. Atlantic Richfield Co., 499 So.2d 1095 (La.App. 3rd Cir.1986) writ denied 501 So.2d 198 (La.1986), which held that welding was specialized per se and therefore not part of an oil company's trade or business. However, plaintiff fails to offer evidence of welding operations under the contract. Plaintiff also offered the affidavit of Calvin Anderson who testified that he was employed by J.E. Merit to perform construction work at Chevron's Oak Point Plant. Plaintiff argues that construction work is specialized per se.
Defendants argue that plaintiff's work operating a clinker hopper and load lugger was not specialized but was part of the general maintenance work needed for day to day operation of the plant. Operation of the load lugger and clinker hopper are essential to the plant's operation because the plant cannot function without the use of the incinerator. Furthermore, the incinerator cannot operate if the ash by-products are not removed from the clinker hopper on a daily basis. Defendants argue that general maintenance is not specialty work thereby satisfying the first step of the Berry analysis. However, we disagree and find that the evidence creates an issue of fact which is inappropriate for summary judgment.
The second step is to compare the principal's trade, business or occupation and the contract work to see if the contract work can be considered a part of the principal's trade, business or occupation. The case of Berry set forth three inquiries to consider under this step: (i) is the contract work routine or customary, i.e., regular or predictable; (ii) does the principal have the equipment and personnel capable of performing the contract work; and (iii) what is the practice in the industry relative to the contract work? Berry, supra at 938.
*947 Plaintiff had been working at the Chevron plant for approximately 18 years. During this employment period, new contractors were awarded the contract with defendant and plaintiff's general employer changed five times. For four years prior to his accident, plaintiff's daily duties were to operate the load lugger and empty the clinker hopper. These duties were routine and predictable and did not change from day to day. Furthermore, the load lugger and clinker hopper were Chevron's equipment. Defendants argue that in plaintiff's deposition, he stated that if he had any questions concerning his work, he would ask a Chevron supervisor. He also received his daily assignment from a Chevron supervisor and was provided with protective clothing, safety glasses, tools and equipment from Chevron. However, plaintiff argues that Chevron did not have the equipment necessary to perform the work done by the contractor. Plaintiff also testified that he performed duties with no supervision from Chevron employees other than to get his assignments. This conflict in evidence also creates an issue of fact.
Lastly, the court must determine whether the principal was engaged in the work at the time of the alleged accident. In support of its motion for summary judgment, Chevron offered the affidavit of Leanne Wallace, shift supervisor at Chevron, who stated that the contractor's employees operated clinker hopper during the day while Chevron employees operated the clinker hopper at night and when plaintiff was not available.
Plaintiff, on the other hand, stated that no Chevron employees ever operated the clinker hopper or load lugger. Plaintiff offered his own affidavit and the affidavit of Wayne Morris, another J.E. Merit employee who operated the load lugger and clinker hopper. They both testified that these duties were never performed at night because this operation was too dangerous to perform after dark. Even if Chevron prevails on the first two steps of the Berry test, the final step creates a question of fact which precludes the granting of summary judgment.
The next issue is whether the trial court erred in finding that plaintiff was Chevron's borrowed servant. In addition to the statutory employer defense, the borrowed servant defense limits an employee to the exclusive remedies under the worker's compensation statute. Louisiana cases as well as federal cases interpreting Louisiana law have set forth several factors to consider when determining borrowed servant status: (1) first and foremost, right of control; (2) selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by the general employer; (6) which employer's work was being performed at the time in question; (7) agreement, either implicit or explicit, between the borrowing and lending employers; (8) furnishing of necessary instruments and the place for performance of the work in question; (9) length of time in employment; and (10) acquiescence by the employee in the new work situation. The cases fully recognize that neither contract nor any other single factor is decisive, and no fixed test is used to determine the existence of a borrowed servant relationship.
Plaintiff argues that the factual nature of the borrowed servant issue renders this case inappropriate for summary judgment. Brumbaugh v. Marathon Oil Co., 507 So.2d 872 (La.App. 5th Cir.1987) writ denied 508 So.2d 824 (La.1987). We agree. The evidence presented creates genuine issues of fact; therefore, summary judgment was not proper.
Lastly, plaintiff argues that the trial court erred in dismissing plaintiff's cause of action under La.C.C. art. 2315.3. Plaintiff alleged that defendants wantonly and recklessly violated the provisions of La.C.C. art. 2315.3. Plaintiff argues that these are allegations of an intentional tort and therefore fall outside the exclusive remedy provisions of the Workers Compensation Act. We disagree. The meaning of intentional is that "the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." Bazley v. Tortorich, 397 So.2d 475, 482 *948 (La.1981). Plaintiff fails to state a cause of action in intentional tort.
We find that the 1989 amendment to LSA-R.S. 23:1061 is not to be given retroactive effect. Applying the Berry analysis to the record in this case, we find that genuine issues of material fact exist precluding summary judgment regarding defendants' status as a statutory employer. Furthermore, issues of fact remain regarding borrowed servant status. Accordingly, for the foregoing reasons, the judgment of the trial court dismissing plaintiff's suit as to Chevron and MacKenzie is reversed and remanded for a trial on the merits.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 23:1061 should be read in conjunction with 23:1032. Prior to the 1989 amendment, the statutes read:

SECTION 1061. Principal contractors; liability
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnify from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
SECTION 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
[2] La.R.S. 23:1061 provides:

Section 1061. Principal contractors; liability
A. When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.